Justice Souter
delivered the opinion of the Court.
This Court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. See Brewer v. Williams, 430 U. S. 387, 398-399 (1977); Michigan v. Jackson, 475 U. S. 625, 629, n. 3 (1986). The question here is whether attachment of the right also requires that a public prosecutor (as distinct from a police *195 officer) be aware of that initial proceeding or involved in its conduct. We hold that it does not.
I
A
Although petitioner Walter Rothgery has never been convicted of a felony,[1] a criminal background check disclosed an erroneous record that he had been, and on July 15, 2002, Texas police officers relied on this record to arrest him as a felon in possession of a firearm. The officers lacked a warrant, and so promptly brought Rothgery before a magistrate, as required by Tex. Code Crim. Proc. Ann., Art. 14.06(a) (Vernon Supp. 2007).[2] Texas law has no formal label for this initial appearance before a magistrate, see 41 G. Dix & R. Dawson, Texas Practice Series: Criminal Practice and Procedure § 15.01 (2d ed. 2001), which is sometimes called the “article 15.17 hearing,” see, e. g., Kirk v. State, 199 S. W. 3d 467, 476-477 (Tex. App. 2006); it combines the Fourth Amendment’s required probable-cause determination[3] with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him, see Tex. Code Crim. Proc. Ann., Art. 15.17(a) (Vernon Supp. 2007).
*196 Rothgery’s article 15.17 hearing followed routine. The arresting officer submitted a sworn “Affidavit Of Probable Cause” that described the facts supporting the arrest and “charge[d] that. . . Rothgery . . . eommit[ted] the offense of unlawful possession of a firearm by a felon—3rd degree felony [Tex. Penal Code Ann. § 46.04],” App. to Pet. for Cert. 33a. After reviewing the affidavit, the magistrate “determined that probable cause existed for the arrest.” Id., at 34a. The magistrate informed Rothgery of the accusation, set his bail at $5,000, and committed him to jail, from which he was released after posting a surety bond. The bond, which the Gillespie County deputy sheriff signed, stated that “Rothgery stands charged by complaint duly filed . . . with the offense of a . . . felony, to wit: Unlawful Possession of a Firearm by a Felon.” Id., at 39a. The release was conditioned on the defendant’s personal appearance in trial court “for any and all subsequent proceedings that may be had relative to the said charge in the course of the criminal action based on said charge.” Ibid.
Rothgery had no money for a lawyer and made several oral and written requests for appointed counsel,[4] which went unheeded.[5] The following January, he was indicted by a Texas grand jury for unlawful possession of a firearm by a felon, resulting in rearrest the next day, and an order increasing bail to $15,000. When he could not post it, he was put in jail and remained there for three weeks.
On January 23, 2003, six months after the article 15.17 hearing, Rothgery was finally assigned a lawyer, who promptly obtained a bail reduction (so Rothgery could get *197 out of jail), and assembled the paperwork confirming that Rothgery had never been convicted of a felony. Counsel relayed this information to the district attorney, who in turn filed a motion to dismiss the indictment, which was granted.
B
Rothgery then brought this 42 U. S. C. § 1983 action against respondent Gillespie County (County), claiming that if the County had provided a lawyer within a reasonable time after the article 15.17 hearing, he would not have been indicted, rearrested, or jailed for three weeks. The County’s failure is said to be owing to its unwritten policy of denying appointed counsel to indigent defendants out on bond until at least the entry of an information or indictment.[6] Rothgery sees this policy as violating his Sixth Amendment right to counsel.[7]
The District Court granted summary judgment to the County, see 413 F. Supp. 2d 806, 807 (WD Tex. 2006), and the Court of Appeals affirmed, see 491 F. 3d 293, 294 (CA5 2007). The Court of Appeals felt itself bound by Circuit precedent, see id., at 296-297 (citing Lomax v. Alabama, 629 F. 2d 413 (CA5 1980), and McGee v. Estelle, 625 F. 2d 1206 (CA5 1980)), to the effect that the Sixth Amendment right to counsel did not attach at the article 15.17 hearing, because “the relevant prosecutors were not aware of or involved in Rothgery’s arrest or appearance before the magistrate on July 16, 2002,” and “[t]here is also no indication that the officer who filed the *198 probable cause affidavit at Rothgery’s appearance had any power to commit the state to prosecute without the knowledge or involvement of a prosecutor,” 491 F. 3d, at 297.
We granted certiorari, 552 U. S. 1061 (2007), and now vacate and remand.
II
The Sixth Amendment right of the “accused” to assistance of counsel in “all criminal prosecutions”[8] is limited by its terms: “it does not attach until a prosecution is commenced.” McNeil v. Wisconsin, 501 U. S. 171, 175 (1991); see also Moran v. Burbine, 475 U. S. 412, 430 (1986). We have, for purposes of the right to counsel, pegged commencement to “ ‘the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,’” United States v. Gouveia, 467 U. S. 180, 188 (1984) (quoting Kirby v. Illinois, 406 U. S. 682, 689 (1972) (plurality opinion)). The rule is not “mere formalism,” but a recognition of the point at which “the government has committed itself to prosecute,” “the adverse positions of government and defendant have solidified,” and the accused “finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.” Kirby, supra, at 689. The issue is whether Texas’s article 15.17 hearing marks that point, with the consequent state obligation to appoint counsel within a reasonable time once a request for assistance is made.
A
When the Court of Appeals said no, because no prosecutor was aware of Rothgery’s article 15.17 hearing or involved in it, the court effectively focused not on the start of adversar *199 ial judicial proceedings, but on the activities and knowledge of a particular state official who was presumably otherwise occupied. This was error.
As the Court of Appeals recognized, see 491 F. 3d, at 298, we have twice held that the right to counsel attaches at the initial appearance before a judicial officer, see Jackson, 475 U. S., at 629, n. 3; Brewer, 430 U. S., at 399. This first time before a court, also known as the “‘preliminary arraignment’” or “‘arraignment on the complaint,’” see 1 W. La-Fave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 1.4(g), p. 135 (3d ed. 2007), is generally the hearing at which “the magistrate informs the defendant of the charge in the complaint, and of various rights in further proceedings,” and “determine[s] the conditions for pretrial release,” ibid. Texas’s article 15.17 hearing is an initial appearance: Rothgery was taken before a magistrate, informed of the formal accusation against him, and sent to jail until he posted bail. See supra, at 195-196.[9] Brewer and Jackson control.
The Brewer defendant surrendered to the police after a warrant was out for his arrest on a charge of abduction. He *200 was then “arraigned before a judge ... on the outstanding arrest warrant,” and at the arraignment, “[t]he judge advised him of his Miranda [v. Arizona, 384 U. S. 436 (1966),] rights and committed him to jail.” Brewer, 430 U. S., at 391. After this preliminary arraignment, and before an indictment on the abduction charge had been handed up, police elicited incriminating admissions that ultimately led to an indictment for first-degree murder. Because neither of the defendant’s lawyers had been present when the statements were obtained, the Court found it “clear” that the defendant “was deprived of. . . the right to the assistance of counsel.” Id., at 397-398. In plain terms, the Court said that “[t]here can be no doubt in the present case that judicial proceedings had been initiated” before the defendant made the incriminating statements. Id., at 399. Although it noted that the State had conceded the issue, the Court nevertheless held that the defendant’s right had clearly attached for the reason that “[a] warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a ... courtroom, and he had been committed by the court to confinement in jail.” Ibid.[10]
*201 In Jackson, the Court was asked to revisit the question whether the right to counsel attaches at the initial appearance, and we had no more trouble answering it the second time around. Jackson was actually two consolidated cases, and although the State conceded that respondent Jackson’s arraignment “represented the initiation of formal legal proceedings,” 475 U. S., at 629, n. 3, it argued that the same was not true for respondent Bladel. In briefing us, the State explained that “[i]n Michigan, any person charged with a felony, after arrest, must be brought before a Magistrate or District Court Judge without unnecessary delay for his initial arraignment.” Brief for Petitioner in Michigan v. Bladel, O. T. 1985, No. 84-1539, p. 24. The State noted that “[w]hile [Bladel] had been arraigned . . . , there is also a second arraignment in Michigan procedure ... , at which time defendant has his first opportunity to enter a plea in a court with jurisdiction to render a final decision in a felony case.” Id., at 25. The State contended that only the latter proceeding, the “arraignment on the information or indictment,” Y. Kamisar, W. LaFave, J. Israel, & N. King, Modern Criminal Procedure 28 (9th ed. 1999) (emphasis deleted), should trigger the Sixth Amendment right.[11] “The defend *202 ant’s rights,” the State insisted, “are fully protected in the context of custodial interrogation between initial arraignment and preliminary examination by the Fifth Amendment right to counsel” and by the preliminary examination itself.[12] See Bladel Brief, supra, at 26.
We flatly rejected the distinction between initial arraignment and arraignment on the indictment, the State’s argument being “untenable” in light of the “clear language in our decisions about the significance of arraignment.” Jackson, supra, at 629, n. 3. The conclusion was driven by the same considerations the Court had endorsed in Brewer: by the time a defendant is brought before a judicial officer, is informed of a formally lodged accusation, and has restrictions imposed on his liberty in aid of the prosecution, the State’s relationship with the defendant has become solidly adversarial. And that is just as true when the proceeding comes before the indictment (in the case of the initial arraignment on a formal complaint) as when it comes after it (at an arraignment on an indictment).[13] See Coleman v. Alabama, *203 399 U. S. 1, 8 (1970) (plurality opinion) (right to counsel applies at preindictment preliminary hearing at which the “sole purposes . . . are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable”); cf. Owen v. State, 596 So. 2d 985, 989, n. 7 (Fla. 1992) (“The term ‘arraign’ simply means to be called before a court officer and charged with a crime”).
B
Our latest look at the significance of the initial appearance was McNeil, 501 U. S. 171, which is no help to the County. In McNeil, the State had conceded that the right to counsel attached at the first appearance before a county court commissioner, who set bail and scheduled a preliminary examination. See id., at 173; see also id., at 175 (“It is undisputed, and we accept for purposes of the present case, that at the time petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached . . . ”). But we did more than just accept the concession; we went on to reaffirm that “[t]he Sixth Amendment right to counsel attaches at the first formal proceeding against an accused,” and observed that “in most States, at least with respect to serious offenses, free counsel is made available at that time . .. .” Id., at 180-181.
That was 17 years ago, the same is true today, and the overwhelming consensus practice conforms to the rule that the first formal proceeding is the point of attachment. We are advised without contradiction that not only the Federal Government, including the District of Columbia, but 43 *204 States take the first step toward appointing counsel “before, at, or just after initial appearance.” App. to Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 1a; see id., at la-7a (listing jurisdictions);[14] see also *205 Brief for American Bar Association as Amicus Curiae 5-8 (describing the ABA’s position for the past 40 years that counsel should be appointed “certainly no later than the accused’s initial appearance before a judicial officer”). And even in the remaining seven States (Alabama, Colorado, Kansas, Oklahoma, South Carolina, Texas, and Virginia) the practice is not free of ambiguity. See App. to Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 5a-7a (suggesting that the practice in Alabama, Kansas, South Carolina, and Virginia might actually be consistent with the majority approach); see also n. 7, supra. In any event, to the extent these States have been denying appointed counsel on the heels of the first appearance, they are a distinct minority.
C
The only question is whether there may be some arguable justification for the minority practice. Neither the Court of Appeals in its opinion, nor the County in its briefing to us, has offered an acceptable one.
1
The Court of Appeals thought Brewer and Jackson could be distinguished on the ground that “neither case addressed the issue of prosecutorial involvement,” and the cases were thus “neutral on the point,” 491 F. 3d, at 298. With Brewer and Jackson distinguished, the court then found itself bound *206 by Circuit precedent that “ ‘an adversary criminal proceeding has not begun in a case where the prosecution officers are unaware of either the charges or the arrest.’ ” 491 F. 3d, at 297 (quoting McGee v. Estelle, 625 F. 3d 1206, 1208 (CA5 1980)). Under this standard of prosecutorial awareness, attachment depends not on whether a first appearance has begun adversary judicial proceedings, but on whether the prosecutor had a hand in starting it. That standard is wrong.
Neither Brewer nor Jackson said a word about the prosecutor’s involvement as a relevant fact, much less a controlling one. Those cases left no room for the factual enquiry the Court of Appeals would require, and with good reason: an attachment rule that turned on determining the moment of a prosecutor’s first involvement would be “wholly unworkable and impossible to administer,” Escobedo v. Illinois, 378 U. S. 478, 496 (1964) (White, J., dissenting), guaranteed to bog the courts down in prying enquiries into the communication between police (who are routinely present at defendants’ first appearances) and the State’s attorneys (who are not), see Brief for Petitioner 39-41. And it would have the practical effect of resting attachment on such absurd distinctions as the day of the month an arrest is made, see Brief for Brennan Center of Justice et al. as Amici Curiae 10 (explaining that “jails may be required to report their arrestees to county prosecutor offices on particular days” (citing Tex. Code Crim. Proc. Ann., Art. 2.19 (Vernon 2005))); or “the sophistication, or lack thereof, of a jurisdiction’s computer intake system,” Brief for Brennan Center, supra, at 11; see also id., at 10-12 (noting that only “[s]ome Texas counties . . . have computer systems that provide arrest and detention information simultaneously to prosecutors, law enforcement officers, jail personnel, and clerks. Prosecutors in these jurisdictions use the systems to pre-screen cases early in the process before an initial appearance” (citing D. Carmichael, M. Gilbert, & M. Voloudakis, Texas A&M U., Public *207 Policy Research Inst., Evaluating the Impact of Direct Electronic Filing in Criminal Cases: Closing the Paper Trap 2-3 (2006), online at http://www.courts.state.tx.us/tfid/pdf/ FinalReport7-12-06wackn. pdf (as visited June 19, 2008, and available in Clerk of Court’s case file))).
It is not that the Court of Appeals believed that any such regime would be desirable, but it thought originally that its rule was implied by this Court’s statement that the right attaches when the government has “committed itself to prosecute.” Kirby, 406 U. S., at 689 (plurality opinion). The Court of Appeals reasoned that because “the decision not to prosecute is the quintessential function of a prosecutor” under Texas law, 491 F. 3d, at 297 (internal quotation marks omitted), the State could not commit itself to prosecution until the prosecutor signaled that it had.
But what counts as a commitment to prosecute is an issue of federal law unaffected by allocations of power among state officials under a State’s law, cf. Moran, 475 U. S., at 429, n. 3 (“[T]he type of circumstances that would give rise to the right would certainly have a federal definition”), and under the federal standard, an accusation filed with a judicial officer is sufficiently formal, and the government’s commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused’s liberty to facilitate the prosecution, see Jackson, 475 U. S., at 629, n. 3; Brewer, 430 U. S., at 399; Kirby, supra, at 689 (plurality opinion); see also n. 9, supra. From that point on, the defendant is “faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law” that define his capacity and control his actual ability to defend himself against a formal accusation that he is a criminal. Kirby, supra, at 689 (plurality opinion). By that point, it is too late to wonder whether he is “accused” within the meaning of the Sixth Amendment, and it makes no practical sense to deny it. See Grano, Rhode Island v. Innis: A Need to Reconsider the Constitu *208 tional Premises Underlying the Law of Confessions, 17 Am. Crim. L. Rev. 1, 31 (1979) (“[I]t would defy common sense to say that a criminal prosecution has not commenced against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law” (internal quotation marks omitted)). All of this is equally true whether the machinery of prosecution was turned on by the local police or the state attorney general. In this case, for example, Rothgery alleges that after the initial appearance, he was “unable to find any employment for wages” because “all of the potential employers he contacted knew or learned of the criminal charge pending against him.” Original Complaint in No. 1:04-CV-00456-LY (WD Tex., July 15, 2004), p. 5. One may assume that those potential employers would still have declined to make job offers if advised that the county prosecutor had not filed the complaint.
2
The County resists this logic with the argument that in considering the significance of the initial appearance, we must ignore prejudice to a defendant’s pretrial liberty, reasoning that it is the concern, not of the right to counsel, but of the speedy-trial right and the Fourth Amendment. See Brief for Respondent 47-51. And it cites Gouveia, 467 U. S. 180, in support of its contention. See Brief for Respondent 49; see also Brief for State of Texas et al. as Amici Curiae 8-9. We think the County’s reliance on Gouveia is misplaced, and its argument mistaken.
The defendants in Gouveia were prison inmates, suspected of murder, who had been placed in an administrative detention unit and denied counsel up until an indictment was filed. Although no formal judicial proceedings had taken place prior to the indictment, see 467 U. S., at 185, the defendants *209 argued that their administrative detention should be treated as an accusation for purposes of the right to counsel because the Government was actively investigating the crimes. We recognized that “because an inmate suspected of a crime is already in prison, the prosecution may have little incentive promptly to bring formal charges against him, and that the resulting preindictment delay may be particularly prejudicial to the inmate,” id., at 192, but we noted that statutes of limitation and protections of the Fifth Amendment guarded against delay, and that there was no basis for “departing] from our traditional interpretation of the Sixth Amendment right to counsel in order to provide additional protections for [the inmates],” ibid.
Gouveia’s holding that the Sixth Amendment right to counsel had not attached has no application here. For one thing, Gouveia does not affect the conclusion we reaffirmed two years later in Jackson, that bringing a defendant before a court for initial appearance signals a sufficient commitment to prosecute and marks the start of adversary judicial proceedings. (Indeed, Jackson refutes the County’s argument that Fifth Amendment protections at the early stage obviate attachment of the Sixth Amendment right at initial appearance. See supra, at 201-202.) And since we are not asked to extend the right to counsel to a point earlier than formal judicial proceedings (as in Gouveia), but to defer it to those proceedings in which a prosecutor is involved, Gouveia does not speak to the question before us.
The County also tries to downplay the significance of the initial appearance by saying that an attachment rule unqualified by prosecutorial involvement would lead to the conclusion “that the State has statutorily committed to prosecute every suspect arrested by the police,” given that “state law requires [an article 15.17 hearing] for every arrestee.” Brief for Respondent 24 (emphasis in original). The answer, though, is that the State has done just that, subject to the *210 option to change its official mind later. The State may rethink its commitment at any point: it may choose not to seek indictment in a felony case, say, or the prosecutor may enter nolle prosequi after the case gets to the jury room. But without a change of position, a defendant subject to accusation after initial appearance is headed for trial and needs to get a lawyer working, whether to attempt to avoid that trial or to be ready with a defense when the trial date arrives.
3
A third tack on the County’s part, slightly different from the one taken by the Fifth Circuit, gets it no further. The County stipulates that “the properly formulated test is not . . . merely whether prosecutors have had any involvement in the case whatsoever, but instead whether the State has objectively committed itself to prosecute.” Id., at 31. It then informs us that “[pjrosecutorial involvement is merely one form of evidence of such commitment.” Ibid. Other sufficient evidentiary indications are variously described: first (expansively) as “the filing of formal charges ... by information, indictment or formal complaint, or the holding of an adversarial preliminary hearing to determine probable cause to file such charges,” ibid, (citing Kirby, 406 U. S., at 689 (plurality opinion)); then (restrictively) as a court appearance following “arrest ... on an indictment or information,” Brief for Respondent 32. Either version, in any event, runs up against Brewer and Jackson: an initial appearance following a charge signifies a sufficient commitment to prosecute regardless of a prosecutor’s participation, indictment, information, or what the County calls a “formal” complaint.
So the County is reduced to taking aim at those cases. Brewer and Jackson, we are told, are “vague” and thus of “limited, if any, precedential value.” Brief for Respondent 33, 35; see also id., at 32, n. 13 (asserting that Brewer and Jackson “neither provide nor apply an analytical frame *211 work for determining attachment”). And, according to the County, our cases (Brewer and Jackson aside) actually establish a “general rule that the right to counsel attaches at the point that [what the County calls] formal charges are filed,” Brief for Respondent 19, with exceptions allowed only in the case of “a very limited set of specific preindictment situations,” id., at 23. The County suggests that the latter category should be limited to those appearances at which the aid of counsel is urgent and “ 'the dangers to the accused of proceeding without counsel’ ” are great. Id., at 28 (quoting Patterson v. Illinois, 487 U. S. 285, 298 (1988)). Texas’s article 15.17 hearing should not count as one of those situations, the County says, because it is not of critical significance, since it “allows no presentation of witness testimony and provides no opportunity to expose weaknesses in the government’s evidence, create a basis for later impeachment, or even engage in basic discovery.” Brief for Respondent 29.
We think the County is wrong both about the clarity of our cases and the substance that we find clear. Certainly it is true that the Court in Brewer and Jackson saw no need for lengthy disquisitions on the significance of the initial appearance, but that was because it found the attachment issue an easy one. The Court’s conclusions were not vague; Brewer expressed “no doubt” that the right to counsel attached at the initial appearance, 430 U. S., at 399, and Jackson said that the opposite result would be “untenable,” 475 U. S., at 629, n. 3.
If, indeed, the County had simply taken the cases at face value, it would have avoided the mistake of merging the attachment question (whether formal judicial proceedings have begun) with the distinct “critical stage” question (whether counsel must be present at a postattachment proceeding unless the right to assistance is validly waived). Attachment occurs when the government has used the judicial machinery to signal a commitment to prosecute as spelled out in Brewer *212 and Jackson. Once attachment occurs, the accused at least[15] is entitled to the presence of appointed counsel during any “critical stage” of the postattachment proceedings; what makes a stage critical is what shows the need for counsel’s presence.[16] Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself.
The County thus makes an analytical mistake in its assumption that attachment necessarily requires the occurrence or imminence of a critical stage. See Brief for Respondent 28-30. On the contrary, it is irrelevant to attachment that the presence of counsel at an article 15.17 hearing, say, may not be critical, just as it is irrelevant that counsel’s presence may not be critical when a prosecutor walks over to the trial court to file an information. As we said in Jackson, “[t]he question whether arraignment signals the initiation of adversary judicial proceedings ... is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel.” 475 U. S., at 630, n. 3. Texas’s article 15.17 hearing plainly signals attachment, even if it is not itself a critical stage.[17]
*213 III
Our holding is narrow. We do not decide whether the 6-month delay in appointment of counsel resulted in prejudice to Rothgery’s Sixth Amendment rights, and have no occasion to consider what standards should apply in deciding this. We merely reaffirm what we have held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant’s initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel. Because the Fifth Circuit came to a different conclusion on this threshold issue, its judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 “[F]elony charges . . . had been dismissed after Rothgery completed a diversionary program, and both sides agree that [he] did not have a felony conviction.” 491 F. 3d 293, 294 (CA5 2007) (case below).

 A separate article of the Texas Code of Criminal Procedure requires prompt presentment in the case of arrests under warrant as well. See Art. 15.17(a) (West Supp. 2007). Whether the arrest is under warrant or warrantless, article 15.17 details the procedures a magistrate must follow upon presentment. See Art. 14.06(a) (in cases of warrantless arrest, “[t]he magistrate shall immediately perform the duties described in Article 15.17 of this Code”).

 See Gerstein v. Pugh, 420 U. S. 103, 113-114 (1975) (“[A] policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest[,]. .. [but] the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest”).

 Because respondent Gillespie County obtained summary judgment in the current case, we accept as true that Rothgery made multiple requests.

 Rothgery also requested counsel at the article 15.17 hearing itself, but the magistrate informed him that the appointment of counsel would delay setting bail (and hence his release from jail). Given the choice of proceeding without counsel or remaining in custody, Rothgery waived the right to have appointed counsel present at the hearing. See 491 F. 3d, at 295, n. 2.

 Rothgery does not challenge the County’s written policy for appointment of counsel, but argues that the County was not following that policy in practice. See 413 F. Supp. 2d 806, 809-810 (WD Tex. 2006).

 Such a policy, if proven, arguably would also be in violation of Texas state law, which appears to require appointment of counsel for indigent defendants released from custody, at the latest, when the “first court appearance” is made. See Tex. Code Crim. Proc. Ann., Art. 1.051(j) (Vernon Supp. 2007). See also Brief for Texas Association of Counties et al. as Amici Curiae 13 (asserting that Rothgery “was statutorily entitled to the appointment of counsel within three days after having requested it”).

 The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.”

 The Court of Appeals did not resolve whether the arresting officer’s formal accusation would count as a “formal complaint” under Texas state law. See 491 F. 3d, at 298-300 (noting the confusion in the Texas state courts). But it rightly acknowledged (albeit in considering the separate question whether the complaint was a “formal charge”) that the constitutional significance of judicial proceedings cannot be allowed to founder on the vagaries of state criminal law, lest the attachment rule be rendered utterly “vague and unpredictable.” Virginia v. Moore, 553 U. S. 164, 175 (2008). See 491 F. 3d, at 300 (“[W]e are reluctant to rely on the formalistic question of whether the affidavit here would be considered a ‘complaint’ or its functional equivalent under Texas case law and Article 15.04 of the Texas Code of Criminal Procedures — a question to which the answer is itself uncertain. Instead, we must look to the specific circumstances of this case and the nature of the affidavit filed at Rothgery’s appearance before the magistrate” (footnote omitted)). What counts is that the complaint filed with the magistrate accused Rothgery of committing a particular crime and prompted the judicial officer to take legal action in response (here, to set the terms of bail and order the defendant locked up).

 The dissent says that “Brewer’s attachment holding is indisputably no longer good law” because “we have subsequently held that the Sixth Amendment right to counsel is “'offense specific,”’” post, at 230 (opinion of Thomas, J.) (quoting Texas v. Cobb, 532 U. S. 162, 164 (2001)), i. e., that it does not “exten[d] to crimes that are ‘factually related’ to those that have actually been charged,” id., at 167. It is true that Brewer appears to have assumed that attachment of the right with respect to the abduction charge should prompt attachment for the murder charge as well. But the accuracy of the dissent’s assertion ends there, for nothing in Cobb’s conclusion that the right is offense specific casts doubt on Brewer’s separate, emphatic holding that the initial appearance marks the point at which the right attaches. Nor does Cobb reflect, as the dissent suggests, see post, at 230-231, a more general disapproval of our opinion in Brewer. While Brewer failed even to acknowledge the issue of offense specificity, it spoke clearly and forcefully about attachment. Cobb merely declined to follow Brewer’s unmentioned assumption, and thus it lends no support to the dissent’s claim that we should ignore what Brewer explicitly said.

 The State continued to press this contention at oral argument. See Tr.. of Oral Arg. in Michigan v. Jackson, O. T. 1985, No. 84-1581 etc., p. 4 (“[T]he Michigan Supreme Court held that if a defendant, while at his initial appearance before a magistrate who has no jurisdiction to accept a final plea in the case, whose only job is ministerial, in other words to advise a defendant of the charge against him, set bond if bond is appropriate, and to advise him of his right to counsel and to get the administrative process going if he’s indigent, the Michigan Supreme Court said if the defendant asked for appointed counsel at that stage, the police are forevermore precluded from initiating interrogation of that defendant”); id., at 8 (“First of all, as a practical matter, at least in our courts, the police are rarely present for arraignment, for this type of an arraignment, for an initial appearance, I guess we should use the terminology. . . . The prosecutor is not there for initial appearance. We have people brought through a tunnel. A court officer picks them up. They take them down and the judge goes through this procedure. . . . There is typically nobody from our side, if you will, there to see what’s going on”).

 The preliminary examination is a preindictment stage at which the defendant is allowed to test the prosecution’s evidence against him, and to try to dissuade the prosecutor from seeking an indictment. See Coleman v. Alabama, 399 U. S. 1 (1970). In Texas, the defendant is notified of his right to a preliminary hearing, which in Texas is called an “examining trial,” at the article 15.17 hearing. See Tex. Code Crim. Proc. Ann., Art. 15.17(a). The examining trial in Texas is optional only, and the defendant must affirmatively request it. See Reply Brief for Petitioner 25.

 The County, in its brief to this Court, suggests that although Brewer and Jackson spoke of attachment at the initial appearance, the cases might actually have turned on some unmentioned fact. As to Brewer, the County speculates that an information might have been filed before the defendant’s initial appearance. See Brief for Respondent 34-36. But as Rothgery points out, the initial appearance in Brewer was made in municipal court, and a felony information could not have been filed there. See Reply Brief for Petitioner 11. As to Jackson, the County suggests that the Court might have viewed Michigan’s initial arraignment as a significant proceeding only because the defendant could make a statement at that hearing, and because respondent Bladel did in fact purport to enter *203 a plea of not guilty. See Brief for Respondent 36-37. But this attempt to explain Jackson as a narrow holding is impossible to square with Jackson’s sweeping rejection of the State’s claims. It is further undermined by the fact that the magistrate in Bladel’s case, like the one in Texas’s article 15.17 hearing, had no jurisdiction to accept a plea of guilty to a felony charge. See Reply Brief for Petitioner 11-12.

 The 43 States are these: (1) Alaska: see Alaska Stat. § 18.85.100 (2006); Alaska Rule Crim. Proc. 5 (Lexis 2006-2007); (2) Arizona: see Ariz. Rules Crim. Proc. 4.2 (West Supp. 2007), 6.1 (West 1998); (3) Arkansas: see Ark. Rule Crim. Proc. 8.2 (2006); Bradford v. State, 325 Ark. 278, 927 S. W. 2d 329 (1996); (4) California: see Cal. Penal Code §§ 858 (1985), 859 (West Supp. 2008); In re Johnson, 62 Cal. 2d 325, 329-330, 398 P. 2d 420, 422-423 (1965); (5) Connecticut: see Conn. Gen. Stat. § 54-1b (2005); Conn. Super. Ct. Crim. Rules §§37-1, 37-3, 37-6 (West 2008); State v. Pierre, 277 Conn. 42, 95-96, 890 A. 2d 474, 507 (2006); (6) Delaware: see Del. Code Ann., Tit. 29, § 4604 (2003); Del. Super. Ct. Crim. Rules 5, 44 (2008); Deputy v. State, 500 A. 2d 581 (Del. 1985); (7) Florida: see Fla. Rule Crim. Proc. 3.111 (West 2007); (8) Georgia: see Ga. Code Ann. §§ 17-4-26 (2004), 17-12-23 (Supp. 2007); O’Kelley v. State, 278 Ga. 564, 604 S. E. 2d 509 (2004); (9) Hawaii: see Haw. Rev. Stat. §§ 802-1, 803-9 (1993); (10) Idaho: see Idaho Crim. Rules 5, 44 (Lexis 2007); Idaho Code § 19-852 (Lexis 2004); (11) Illinois: see Ill. Comp. Stat., ch. 725, §5/109-1 (2006); (12) Indiana: see Ind. Code §§ 35-33-7-5, 35-33-7-6 (West 2004); (13) Iowa: see Iowa Rules Crim. Proc. §§ 2.2, 2.28 (West 2008); (14) Kentucky: see Ky. Rule Crim. Proc. 3.05 (Lexis 2008); (15) Louisiana: see La. Code Crim. Proc. Ann., Art 230.1 (West Supp. 2008); (16) Maine: see Me. Rule Crim. Proc. 5C (West 2007); (17) Maryland: see Md. Ann. Code, Art. 27A, §4 (Lexis Supp. 2007); Md. Rule 4-214 (Lexis 2008); McCarter v. State, 363 Md. 705, 770 A. 2d 195 (2001); (18) Massachusetts: see Mass. Rule Crim. Proc. 7 (West 2006); (19) Michigan: see Mich. Rule Crim. Proc. 6.005 (West 2008); (20) Minnesota: see Minn. Rules Crim. Proc. 5.01, 5.02 (2006); (21) Mississippi: see Jimpson v. State, 532 So. 2d 985 (Miss. 1988); (22) Missouri: see Mo. Rev. Stat. § 600.048 (2000); (23) Montana: see Mont. Code Ann. §46-8-101 (2007); (24) Nebraska: see Neb. Rev. Stat. § 29-3902 (1995); (25) Nevada: see Nev. Rev. Stat. § 178.397 (2007); (26) New Hampshire: see N. H. Rev. Stat. Ann. § 604-A:3 (2001); (27) New Jersey: see N. J. Rule Crim. Proc. 3:4-2 (West 2008); State v. Tucker, 137 N. J. 259, 645 A. 2d 111 (1994); (28) New Mexico: see N. M. Stat. Ann. § 31-16-3 (2000); (29) New York: see N. Y. Crim. Proc. Law Ann. § 180.10 (West 2007); (30) North Carolina: see N. C. Gen. Stat. Ann. § 7A-451 (Lexis 2007); (31) North Dakota: see N. D. Rules Crim. Proc. 5, 44 (Lexis 2008-2009); (32) Ohio: see Ohio Rules Crim. Proc. 5, 44 (Lexis 2006); (33) Oregon: see Ore. Rev. Stat. §§ 135.010, 135.040, 135.050 (2007); (34) Pennsylvania: see Pa. Rules Crim. Proc. 122, 519 (West 2008); *205 (35) Rhode Island: see R. I. Dist. Ct. Rules Crim. Proc. 5, 44 (2007); (36) South Dakota: see S. D. Rule Crim. Proc. § 23A-40-6 (2007); (37) Tennessee: see Term. Rule Crim. Proc. 44 (2007); (38) Utah: see Utah Code Ann. § 77-32-302 (Lexis Supp. 2007); (39) Vermont: see Vt. Stat. Ann., Tit. 13, §5234 (1998); Vt. Rules Crim. Proc. 5, 44 (2003); (40) Washington: see Wash. Super. Ct. Crim. Rule 3.1 (West 2008); (41) West Virginia: see W. Va. Code Ann. § 50-4-3 (Lexis 2000); State v. Barrow, 178 W. Va. 406, 359 S. E. 2d 844 (1987); (42) Wisconsin: see Wis. Stat. § 967.06 (2003-2004); (43) Wyoming: see Wyo. Stat. Ann. § 7-6-105 (2007); Wyo. Rules Crim. Proc. 5, 44 (2007).

 We do not here purport to set out the scope of an individual’s post-attachment right to the presence of counsel. It is enough for present purposes to highlight that the enquiry into that right is a different one from the attachment analysis.

 The cases have defined critical stages as proceedings between an individual and agents of the State (whether “formal or informal, in court or out,” see United States v. Wade, 388 U. S. 218, 226 (1967)) that amount to “trial-like confrontations,” at which counsel would help the accused “in coping with legal problems or . . . meeting his adversary,” United States v. Ash, 413 U. S. 300, 312-313 (1973); see also Massiah v. United States, 377 U. S. 201 (1964).

 The dissent likewise anticipates an issue distinct from attachment when it claims Rothgery has suffered no harm the Sixth Amendment recognizes. Post, at 235. Whether the right has been violated and whether Rothgery has suffered cognizable harm are separate questions from when the right attaches, the sole question before us.