In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00499-CR


____________________



BRAD AARON GOULD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 07-02-01292-CR






MEMORANDUM OPINION


 The sole issue in this appeal centers on the trial court's denial of a pretrial motion to
suppress a video-recorded statement of appellant, Brad Aaron Gould, in which he
incriminates himself in the aggravated sexual assault and aggravated robbery of two female
victims. The trial court conducted an evidentiary hearing and issued written findings of fact
and conclusions of law in support of its denial of the motion. Subsequently, Gould pled
guilty to three counts (one of aggravated sexual assault, and two of aggravated robbery)
contained in a six-count indictment, and the State abandoned the remaining three counts (one
aggravated sexual assault and two aggravated kidnapping). (1) Punishment was assessed in
each offense at twenty-five years of confinement in the Texas Department of Criminal
Justice, Correctional Institutions Division, with the sentences to run concurrently. 

 Gould raises a single appellate issue complaining of the denial of his suppression
motion but advances four separate areas of argument. We reproduce them as they appear in
his brief: 

 1. Gould's statement should have been suppressed because Gould was
interrogated while in custody without receiving Miranda warnings. After
Gould confessed, he was informed [of] his Miranda rights, and interrogated
again. Gould confessed again. Under Missouri v. Seibert, the Miranda
warnings were ineffective, and Gould's statements should have been
suppressed.


 2. When a magistrate found that probable cause to arrest existed and signed
an arrest warrant, and detectives arrested and interrogated Gould, his Sixth
Amendment rights attached. Gould's Sixth Amendment right to an attorney
was violated when detectives interrogated him without an attorney present.


 3. When detectives interrogated Gould before an article 15.17 hearing was
held, in violation of article 15.17's requirement that a suspect be taken before
a magistrate without unnecessary delay to be informed of the charges against
him and to be informed of his rights, Gould was deprived of his Sixth
Amendment rights.


 4. When Gould attempted to invoke his Fifth Amendment right to counsel,
officers misled him about his right to an attorney and led him away from
requesting an attorney. This violated Gould's Fifth Amendment right to an
attorney. 


 In addition to the Fifth and Sixth Amendments, Gould's written suppression motion
complained that the sheriff's office investigators also violated his rights under the Fourth
Amendment to the United States Constitution, and violated his rights under article I, sections
9, 10, and 19 of the Texas Constitution, and under articles 38.22 and 38.23 of the Texas Code
of Criminal Procedure. On appeal, however, Gould abandons his Fourth Amendment and
Texas Constitution claims as he provides no argument or authority with respect to these
provisions. 

STANDARD OF REVIEW


 We review a trial court's ruling on a motion to suppress under a bifurcated standard. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's
decision, we do not engage in our own factual review. Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony. Wiede v. State, 214 S.W.3d 17,
24-25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000),
modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006). 
Thus, we give almost total deference to the trial court's rulings on (1) questions of historical
fact, even if the trial court's determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor. Amador, 221 S.W.3d at 673; Montanez v. State, 195
S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.
Crim. App. 2002). When application-of-law-to-fact questions do not turn on the credibility
and demeanor of the witnesses, however, we review the trial court's ruling on those questions
de novo. Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652-53. 

 Additionally, when reviewing a decision on a suppression motion, we must view all
the evidence in the light most favorable to the trial court's ruling. Wiede, 214 S.W.3d at 24;
State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes
explicit fact findings, we determine whether the evidence, when viewed in the light most
favorable to the ruling, supports those fact findings. Kelly, 204 S.W.3d at 818. We then
review the trial court's legal conclusion de novo unless the explicit fact findings supported
by the record are also dispositive of the legal conclusion. Id. Lastly, we must uphold the
trial court's ruling if it is supported by the record and is correct under any theory of law
applicable to the case, even if the trial court gave the wrong reason for its ruling. State v.
Stevens, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003). 

Argument 1: Missouri v. Seibert Controls


 In Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), the
police used an interrogation technique during custodial interrogation whereby they would
withhold Miranda (2) warnings until the suspect confessed. Id. at 604. Then, the interrogating
officer would provide Miranda warnings to the suspect, secure the suspect's waiver of
counsel's presence during interrogation, and then proceed to "[lead] the suspect to cover the
same ground a second time." Id. The Court then described the efficacy of this technique as
viewed from the perspective of its proponents: 

 By any objective measure, applied to circumstances exemplified here, it is
likely that if the interrogators employ the technique of withholding warnings
until after interrogation succeeds in eliciting a confession, the warnings will
be ineffective in preparing the suspect for successive interrogation, close in
time and similar in content. After all, the reason that question-first is catching
on is as obvious as its manifest purpose, which is to get a confession the
suspect would not make if he understood his rights at the outset; the sensible
underlying assumption is that with one confession in hand before the warnings,
the interrogator can count on getting its duplicate, with trifling additional
trouble. Upon hearing warnings only in the aftermath of interrogation and just
after making a confession, a suspect would hardly think he had a genuine right
to remain silent, let alone persist in so believing once the police began to lead
him over the same ground again. A more likely reaction on a suspect's part
would be perplexity about the reason for discussing rights at that point,
bewilderment being an unpromising frame of mind for knowledgeable
decision. 


Id. at 613 (footnote omitted). The Court further noted that this interrogation technique
exhibited "a police strategy adapted to undermine the Miranda warnings[] . . . to the point
that a reasonable person in the suspect's shoes would not have understood [the belated
Miranda warnings] to convey a message that she retained a choice about continuing to talk." 
Id. at 616-17 (footnotes omitted). The Court concluded with the following holding: 
"Because the question-first tactic effectively threatens to thwart Miranda's purpose of
reducing the risk that a coerced confession would be admitted, and because the facts here do
not reasonably support a conclusion that the warnings given could have served their purpose,
Seibert's postwarning statements are inadmissible." Id. at 617. 

 In the instant case, a "question-first" claim by Gould was hotly contested during the
suppression hearing, and continues here on appeal. Gould testified the Montgomery County
Sheriff's detectives began the unwarned questioning the moment Gould was placed in their
custody. During the subsequent drive from North Houston to the South County Annex
building in Montgomery County, Gould stated the unwarned questioning continued with
photos of other suspects being depicted on a laptop computer and further questioning by the
detectives from their case file. Once at the County Annex, Gould was brought to a room,
shown photographs of other suspects, and asked to identify the men depicted, with no
preceding Miranda warnings given. Following this, Gould testified he was brought to
another room where a video was made of him being given Miranda warnings, initialing the
written warnings and acknowledging he understood each one, and then verbally agreeing to
speak to the detectives about the crimes in question and the individuals involved. 

 Detectives Kenneth Bivins and Tarrence Greenwood, (3) both testified that they had no
knowledge of, or did not recall, any conversation taking place with Gould before the
commencement of the video interview, at which time Gould was given Miranda warnings,
waived his right to the presence of counsel during questioning, and agreed to talk to the
detectives. As we noted above, at a suppression hearing, the trial court is the sole trier of
fact, judge of the credibility of the witnesses and of the weight to be given to their testimony. 
Wiede, 214 S.W.3d at 24-25; Ross, 32 S.W.3d at 855. In its written findings, the trial court
found, inter alia, Detective Bivins testified that other than pleasantries, no substantive
matters were discussed with Gould except what appears on the video recording of Gould's
confession, and that Gould was provided with Miranda warnings only once and that was
depicted on the video when Gould was interviewed. The trial court also found that Gould
freely and voluntarily waived his Miranda rights in writing and as depicted on the video
recording. The trial court concluded that Gould's video-recorded statement was admissible
at trial. As a reviewing court, we may not substitute our opinion for that of the trial court,
and we are constrained from reaching a different result from that of the trial court so long as
the trial court's ruling is at least within the zone of reasonable disagreement. See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

 Because the trial court's application of the law to the facts was heavily dependent on
an evaluation of credibility and demeanor of the witnesses, we must give almost total
deference to its ruling. Amador, 221 S.W.3d at 673; Montanez, 195 S.W.3d at 108-09. 
Affording the trial court the appropriate deference, we find the evidence, when taken in the
light most favorable to the trial court's ruling, supports the trial court's fact findings pertinent
to the Seibert issue, as set forth above. Kelly, 204 S.W.3d at 818. Additionally, as the
detectives' testimony supports the trial court's finding that no conversations of any substance
were engaged in with Gould prior to giving him his Miranda warnings at the beginning of
the video interview, this finding is also dispositive of the legal conclusion that Gould's
recorded statement was admissible at trial. See id. The trial court essentially believed the
detectives and did not believe Gould in finding that, because Gould was not questioned
before he was provided warnings and then voluntarily waived his Miranda rights, the holding
in Seibert was not implicated. Such a determination is supported by the record. We must
give almost total deference to such a decision. See Rocha v. State, 16 S.W.3d 1, 12 (Tex.
Crim. App. 2000). Gould's first argument under issue one is overruled. 

Argument 2: Sixth Amendment Attached Before Interview


 Gould argues that his statement should have been suppressed because the detectives
interviewed him without an attorney present after his Sixth Amendment right to an attorney
had attached. Gould argues that because his Sixth Amendment rights had attached, he was
entitled to the presence of appointed counsel during any "critical stage" of the subsequent
prosecution. Among the authorities cited by Gould is Rothgery v. Gillespie County, Tex., 128
S.Ct. 2578, 171 L.Ed.2d 366, 76 U.S.L.W. 4520 (2008). Although a civil case, the issue in
Rothgery was whether an article 15.17 (4) hearing marked the commencement of prosecution,
for Sixth Amendment attachment-of-right-to-counsel purposes, "with the consequent state
obligation to appoint counsel within a reasonable time once a request for assistance is made." 
Id. 128 S.Ct. at 2583. In Rothgery, the Court held that it did. Id. at 2591-92. However,
Gould concedes that at the time he was interviewed, he had not been taken before a
magistrate for an article 15.17 hearing nor had he been confined by a court to jail or
imprisonment. For us to find attachment in the absence of these factors would directly
contradict the Supreme Court's explicit holding, viz:

 We merely reaffirm what we have held before and what an overwhelming
majority of American jurisdictions understand in practice: a criminal
defendant's initial appearance before a judicial officer, where he learns the
charge against him and his liberty is subject to restriction, marks the start of
adversary judicial proceedings that trigger attachment of the Sixth Amendment
right to counsel. 


Id. at 2592. Under the facts presented, Gould's Sixth Amendment right to counsel had not
yet attached at the time of his video interview with Detectives Bivins and Greenwood. 
Argument two is overruled. 

Argument 3: Article 15.17 and Sixth Amendment Violations


 Initially, Gould argues that because he was not immediately brought before a
magistrate for an article 15.17 hearing, the State violated his Sixth Amendment right to
counsel. Gould then asserts, "There is no evidence in the record when, if at all, Gould was
taken before a magistrate to have his rights explained to him." This is not accurate. The
record contains a document titled, "Probable Cause, Rights, Bail And Attorney Request
Form," indicating that on September 21, 2006, two days after being taken into custody,
Gould was brought before a magistrate, informed of the charges against him, provided with
Miranda warnings, and had bail set. Additionally, the document reflects that when asked if
he wanted counsel appointed to represent him, Gould answered in the affirmative. The
record thus indicates that Gould was provided an article 15.17 hearing within forty-eight
hours of his arrest. See Tex. Code Crim. Proc. Ann. art. 15.17(a) (Vernon Supp. 2008). 

 Without citation to any authority, Gould then contends that "if a confession is obtained
and introduced as a result of the failure to take an accused before a magistrate for an article
15.17 hearing, reversible error occurs." Taken at face value, this does not represent the
current state of the law. We interpret the argument as complaining that an unreasonable
delay in bringing Gould before a magistrate after his arrest rendered his confession
inadmissible because the violation of article 15.17 resulted in the failure of his Sixth
Amendment right to counsel to ever attach. 

 The Texas Court of Criminal Appeals has held that violations of article 15.17 do not
automatically invalidate a confession because the statutory provision relates to the duties of
the arresting officer and the magistrate. Williams v. State, 692 S.W.2d 671, 675 (Tex. Crim.
App. 1984). "Absent a showing of a causal connection between an accused's confession and
the failure to take the accused promptly before a magistrate, the validity of the confession is
not affected." Id. at 675-76 (citations omitted). See also Cantu v. State, 842 S.W.2d 667,
680 (Tex. Crim. App. 1992) (holding the defendant failed to show causal connection between
State's failure to present him to magistrate and the statements he gave to police; thus,
statements were admissible at trial); Ex parte Stansbery, 702 S.W.2d 643, 647 (Tex. Crim.
App. 1986) (finding that because the record did not reflect a causal connection between the
failure to take the defendant before a magistrate and his confession, the defendant's
complaint that his oral statement was inadmissible was overruled). Moreover, a confession
obtained prior to the accused being promptly taken to a magistrate is nevertheless admissible
as long as his Miranda warnings had been read to him before the confession was taken. 
Curry v. State, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995). 

 In the instant case, the trial court found Gould was provided his Miranda warnings
prior to his statement, and this finding is supported by the record. We must defer almost
totally to this finding. See Kelly, 204 S.W.3d at 818. Accordingly, argument three is
overruled.

Argument 4: Fifth Amendment Violation


 Lastly, Gould contends the detectives "led him away from requesting an attorney"
during their explanation of his Miranda rights prior to his recorded statement. Gould further
contends that these actions by the detectives deprived him of his Fifth Amendment right to
assistance of counsel prior to and during the interview. Relying on Russell v. State, 727
S.W.2d 573, 576 (Tex. Crim. App. 1987), Gould narrows this argument by asserting that
when a suspect's request for counsel is ambiguous or equivocal, the interrogation must cease
until the invocation issue is clarified. However, an accused's comments may amount to no
invocation of his right to counsel at all. In such cases, the interrogation may continue. Id. 
at 576 n.2. 

 In the instant case, the trial court found that Gould's request for an attorney was not
done clearly and unambiguously as required in Russell v. State, 727 S.W.2d 573 (Tex. Crim.
App. 1987). The record indicates that, prior to the interview, Detective Bivins presented
Gould with a sheet of paper setting out the Miranda warnings. Bivins verbally explained
each warning to Gould and Gould initialed each warning indicating he understood it. The
paper also contained language permitting the person being warned to knowingly and
voluntarily waive his rights. Gould signed the waiver and agreed to speak to the detectives. 
As he was executing the waiver, Gould asked Bivins the following: "I will get an attorney
eventually, right?" (5) Detective Bivins replies: "Yes." Apparently attempting to clarify the
question, Bivins then asks Gould, "Are you talking about later on for court?" Gould then
replies, "Yes." Gould contends that while his question may not have been clear and
unambiguous, it was improper for Bivins to "lead Gould away from his attempt to request
an attorney." 

 As authority for this particular argument, Gould cites to cases holding that if a suspect
makes an equivocal or ambiguous reference to an attorney, cessation of questioning is not
required, and that police are not required to question a suspect to decipher an ambiguous
request. See Davis v. United States, 512 U.S. 452, 459, 461-62, 114 S.Ct. 2350, 129 L.Ed.2d
362 (1994). Gould, however, provides no authority for his argument that Detective Bivins
improperly led Gould away from making a proper request for assistance of counsel by simply
asking Gould if he was referring to an attorney for future court proceedings. 

 The Supreme Court in Davis held that the test as to whether a suspect invoked his
right to counsel is an objective one, that being, 

 "at a minimum, some statement that can reasonably be construed to be an
expression of a desire for the assistance of an attorney." But if a suspect
makes a reference to an attorney that is ambiguous or equivocal in that a
reasonable officer in light of the circumstances would have understood only
that the suspect might be invoking the right to counsel, our precedents do not
require the cessation of questioning. 


Davis, 512 U.S. at 459 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115
L.Ed.2d 158 (1991)) (citations omitted). The Court further noted that

 [a]lthough a suspect need not "speak with the discrimination of an Oxford
don," post, at 2364 (SOUTER, J., concurring in judgment), he must articulate
his desire to have counsel present sufficiently clearly that a reasonable police
officer in the circumstances would understand the statement to be a request for
an attorney. If the statement fails to meet the requisite level of clarity,
Edwards (6) does not require that the officers stop questioning the suspect. 


Id.. In the instant case, we find no abuse of discretion by the trial court in concluding that
Gould's question regarding his getting an attorney "eventually" was not a clear and
unambiguous request for assistance of counsel at the impending interrogation, and that no
reasonable police officer in the circumstances presented would have understood Gould's
question as such a request. See Davis, 512 U.S. at 459; see generally In the Matter of H.V.,
252 S.W.3d 319, 325-26 (Tex. 2008). We therefore overrule Gould's fourth argument,
overrule Gould's sole issue, and affirm the judgment of the trial court. 

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on February 12, 2009

Opinion Delivered September 23, 2009

Do not publish


Before Gaultney, Kreger, and Horton, JJ.
1. In addition to Gould, the indictment charged six other individuals with the six named
offenses. 
2. We refer here to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). 
3. Detective Greenwood was the lead detective in the case and Detective Bivins was
assigned to work on the case with Greenwood. 
4. Art. 15.17. Duties of arresting officer and magistrate 

 

 (a) In each case enumerated in this Code, the person making the arrest
or the person having custody of the person arrested shall without unnecessary
delay, but not later than 48 hours after the person is arrested, take the person
arrested or have him taken before some magistrate of the county where the
accused was arrested or, to provide more expeditiously to the person arrested
the warnings described by this article, before a magistrate in any other county
of this state. . . . The magistrate shall inform in clear language the person
arrested . . . of the accusation against him and of any affidavit filed therewith,
of his right to retain counsel, of his right to remain silent, of his right to have
an attorney present during any interview with peace officers or attorneys
representing the state, of his right to terminate the interview at any time, and
of his right to have an examining trial. The magistrate shall also inform the
person arrested of the person's right to request the appointment of counsel if
the person cannot afford counsel. The magistrate shall inform the person
arrested of the procedures for requesting appointment of counsel. . . . The
magistrate shall ensure that reasonable assistance in completing the necessary
forms for requesting appointment of counsel is provided to the person at the
same time. 


Tex. Code Crim. Proc. Ann. art. 15.17(a) (Vernon Supp. 2008). 
5. The State's brief quotes Gould as saying, "Eventually am I going to get a lawyer?" 
Gould's brief sets out two different quotes, "Will I eventually be able to get an attorney?",
and "I will get an attorney eventually, right?" 
6. Edwards v. Arizona, 451 U.S. 447, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)
(holding that once an accused invokes his right to have counsel present during custodial
interrogation, he is not subject to further interrogation by the authorities until counsel has
been made available, unless the accused himself initiates the contact with authorities).