Justice Scalia,
with whom Justice Thomas joins, dissenting.
In the best of all possible worlds, criminal defendants contemplating a guilty plea ought to be advised of all serious collateral consequences of conviction, and surely ought not to be misadvised. The Constitution, however, is not an all-purpose tool for judicial construction of a perfect world; and when we ignore its text in order to make it that, we often find ourselves swinging a sledge where a tack hammer is needed.
The Sixth Amendment guarantees the accused a lawyer “for his defence” against a “criminal prosecutio[n]” — not for sound advice about the collateral consequences of conviction. For that reason, and for the practical reasons set forth in Part I of Justice Alito’s concurrence, I dissent from the Court’s conclusion that the Sixth Amendment requires counsel to provide accurate advice concerning the potential removal consequences of a guilty plea. For the same reasons, but unlike the concurrence, I do not believe that affirmative misadvice about those consequences renders an attorney’s *389 assistance in defending against the prosecution constitutionally inadequate; or that the Sixth Amendment requires counsel to warn immigrant defendants that a conviction may render them removable. Statutory provisions can remedy these concerns in a more targeted fashion, and without producing permanent, and legislatively irreparable, overkill.
* * *
The Sixth Amendment as originally understood and ratified meant only that a defendant had a right to employ counsel, or to use volunteered services of counsel. See United States v. Van Duzee, 140 U. S. 169, 173 (1891); W. Beaney, Right to Counsel in American Courts 21, 28-29 (1955). We have held, however, that the Sixth Amendment requires the provision of counsel to indigent defendants at government expense, Gideon v. Wainwright, 372 U. S. 335, 344-345 (1963), and that the right to “the assistance of counsel” includes the right to effective assistance, Strickland v. Washington, 466 U. S. 668, 686 (1984). Even assuming the validity of these holdings, I reject the significant further extension that the Court, and to a lesser extent the concurrence, would create. We have until today at least retained the Sixth Amendment’s textual limitation to criminal prosecutions. “[W]e have held that ‘defence’ means defense at trial, not defense in relation to other objectives that may be important to the accused.” Rothgery v. Gillespie County, 554 U. S. 191, 216 (2008) (Alito, J., concurring) (summarizing cases). We have limited the Sixth Amendment to legal advice directly related to defense against prosecution of the charged offense — advice at trial, of course, but also advice at postindictment interrogations and lineups, Massiah v. United States, 377 U. S. 201, 205-206 (1964); United States v. Wade, 388 U. S. 218, 236-238 (1967), and in general advice at all phases of the prosecution where the defendant would be at a disadvantage when pitted alone against the legally trained agents of the state, see Moran v. Burbine, 475 U. S. *390 412, 430 (1986). Not only have we not required advice of counsel regarding consequences collateral to prosecution, we have not even required counsel appointed to defend against one prosecution to be present when the defendant is interrogated in connection with another possible prosecution arising from the same event. Texas v. Cobb, 532 U. S. 162, 164 (2001).
There is no basis in text or in principle to extend the constitutionally required advice regarding guilty pleas beyond those matters germane to the criminal prosecution at hand— to wit, the sentence that the plea will produce, the higher sentence that conviction after trial might entail, and the chances of such a conviction. Such matters fall within “the range of competence demanded of attorneys in criminal cases,” McMann v. Richardson, 397 U. S. 759, 771 (1970). See id., at 769-770 (describing the matters counsel and client must consider in connection with a contemplated guilty plea). We have never held, as the logic of the Court’s opinion assumes, that once counsel is appointed all professional responsibilities of counsel — even those extending beyond defense against the prosecution — become constitutional commands. Cf. Cobb, supra, at 171, n. 2; Moran, supra, at 430. Because the subject of the misadvice here was not the prosecution for which Jose Padilla was entitled to effective assistance of counsel, the Sixth Amendment has no application.
Adding to counsel’s duties an obligation to advise about a conviction’s collateral consequences has no logical stopping point. As the concurrence observes:
“[A] criminal convictio[n] can carry a wide variety of consequences other than conviction and sentencing, including civil commitment, civil forfeiture, the loss of the right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and loss of business or professional licenses____All of those consequences are seriou[s]’____” Ante, at 376 (Alito, J., concurring in judgment).
*391 But it seems to me that the concurrence suffers from the same defect. The same indeterminacy, the same inability to know what areas of advice are relevant, attaches to misadvice. And the concurrence’s suggestion that counsel must warn defendants of potential removal consequences, see ante, at 387 — what would come to be known as the “Padilla warning’’ — cannot be limited to those consequences except by judicial caprice. It is difficult to believe that the warning requirement would not be extended, for example, to the risk of heightened sentences in later federal prosecutions pursuant to the Armed Career Criminal Act, 18 U. S. C. § 924(e). We could expect years of elaboration upon these new issues in the lower courts, prompted by the defense bar’s devising of ever-expanding categories of plea-invalidating misadvice and failures to warn — not to mention innumerable evidentiary hearings to determine whether misadvice really occurred or whether the warning was really given.
The concurrence’s treatment of misadvice seems driven by concern about the voluntariness of Padilla’s guilty plea. See ante, at 385-386. But that concern properly relates to the Due Process Clauses of the Fifth and Fourteenth Amendments, not to the Sixth Amendment. See McCarthy v. United States, 394 U. S. 459, 466 (1969); Brady v. United States, 397 U. S. 742, 748 (1970). Padilla has not argued before us that his guilty plea was not knowing and voluntary. If that is, however, the true substance of his claim (and if he has properly preserved it) the state court can address it on remand.[1] *392 But we should not smuggle the claim into the Sixth Amendment.
The Court’s holding prevents legislation that could solve the problems addressed by today’s opinions in a more precise and targeted fashion. If the subject had not been constitutionalized, legislation could specify which categories of misadvice about matters ancillary to the prosecution invalidate plea agreements, what collateral consequences counsel must bring to a defendant’s attention, and what warnings must be given.[2] Moreover, legislation could provide consequences for the misadvice, nonadvice, or failure to warn, other than nullification of a criminal conviction after the witnesses and evidence needed for retrial have disappeared. Federal immigration law might provide, for example, that the near-automatic removal which follows from certain criminal convictions will not apply where the conviction rested upon a guilty plea induced by counsel’s misadvice regarding removal consequences. Or legislation might put the government to a choice in such circumstances: Either retry the defendant or forgo the removal. But all that has been precluded in favor of today’s sledge hammer.
In sum, the Sixth Amendment guarantees adequate assistance of counsel in defending against a pending criminal prosecution. We should limit both the constitutional obligation to provide advice and the consequences of bad advice to that well defined area.

I do not mean to suggest that the Due Process Clause would surely provide relief. We have indicated that awareness of "direct consequences” suffices for the validity of a guilty plea. See Brady, 397 U. S., at 755 (internal quotation marks omitted). And the required colloquy between a federal district court and a defendant required by Federal Rule of Criminal Procedure 11(b) (formerly Rule 11(c)), which we have said approximates the due process requirements for a valid plea, see Libretti v. United States, 516 U. S. 29, 49-50 (1995), does not mention collateral consequences. Whatever the outcome, however, the effect of misadvice *392 regarding such consequences upon the validity of a guilty plea should be analyzed under the Due Process Clause.

 As the Court’s opinion notes, ante, at 374, n. 15, many States — including Kentucky — already require that criminal defendants be warned of potential removal consequences.