Filed 12/18/14  P. v. Rodriguez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B252980 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA125898) |
| v. | |
| TOMAS PENA RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.   Robert J. Higa, Judge.   Affirmed.

Marcus Gomez, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General and Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Tomas Pena Rodriguez (defendant) challenges his convictions for committing lewd acts upon a child on the grounds that his confession should have been suppressed and that his trial counsel should have tried to introduce evidence that the victim had lied about the death of two family members to an elementary school teacher.  We reject these arguments, and affirm defendant's convictions and eight-year prison sentence.

## FACTS AND PROCEDURAL BACKGROUND

Defendant and his wife adopted P. (Daughter) when she was eight months old. When Daughter was 12 years old, defendant came into her bedroom one night, placed his head between her naked legs, and licked her vagina until she awakened.  Daughter told her best friend; her best friend's mother; the officer who responded when the best friend's mother called the police; the forensic nurse who examined her; the police detective who interviewed her; and the social worker who spoke with her a month later.  Daughter also reported that defendant had groped her breasts and buttocks, as well as stuck his tongue in her mouth, starting when she was 10 years old—both at home and when she went with him to work.  The forensic examination revealed no injury, which was consistent with the type of contact Daughter reported.  Defendant admitted to police that it was "possible" that he kissed her vagina when "the temptation came over" him.

The People charged defendant with four counts of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)[1]).  Count 2 pertained to the bedroom incident; count 3, to multiple acts of kissing over the prior two years; count 4, to fondling her at home over the prior two years; and count 5, to fondling her at work over the prior two years.  The People further alleged that these crimes involved "substantial sexual conduct" with a child under the age of 14 (§ 1203.066, subd. (a)(8)).  (The People originally charged continuous sexual abuse (§ 288.5, subd. (a)), but dismissed that count prior to trial.)

Defendant went to trial.  Daughter denied that defendant had touched her, and denied telling anyone that he had.  Defendant then called Daughter's sister, the sister's

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

partner, and two of the foster mothers who had taken custody of Daughter after she was removed from her parents' custody. Each of them testified that Daughter told them that she had made a "big mistake"; had done "wrong"; or had made up the allegations against defendant.

The jury found defendant guilty of the bedroom incident and of kissing her in the prior two years (counts 2 and 3); the jury acquitted him of both fondling counts (counts 4 and 5). The jury found the substantial sexual conduct allegation to be true. The trial court denied defendant's motion for new trial, and sentenced him to eight years in state prison.

Defendant timely appealed.

## DISCUSSION

### I. Admission of defendant's confession

Defendant was arrested mid-afternoon on a Tuesday. He was interviewed approximately 10 hours later, around one a.m. on Wednesday morning, for approximately 30 minutes. He was given his *Miranda*[2] rights and waived them, but denied the charges. He was released from custody midday on Thursday, and immediately re-arrested and interviewed. He was again advised of his *Miranda* rights, and waived them. The interviewing detective told defendant that DNA from his saliva was recovered from Daughter's vagina; this was untrue. Defendant continued to deny any wrongdoing , but eventually said that he "possibly" licked Daughter's vagina because he was overwhelmed by temptation. This second interview lasted an hour.[3]

Defendant moved to suppress his confession prior to trial, and the trial court denied his motion. Defendant asserts this was error. The basis for defendant's challenge is unclear, so we will review the admissibility of his confession under *Miranda*, under the Sixth Amendment, and under due process. Because the interviews were recorded, our

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).
[3] Both interviews were conducted in Spanish by a Spanish-speaking detective. They were recorded, and translated and transcribed for the jury.

3

task is to apply undisputed facts to the law; our review is consequently de novo.  (E.g., *People v. Nelson* (2012) 53 Cal.4th 367, 380 (*Nelson*).)

**A.    *Miranda***

Where, as here, a suspect has been advised of his rights to remain silent and to have an attorney present during police questioning (as required by *Miranda*), and has waived those rights, police must stop their questioning only if the suspect "'unambiguously' assert[s] his right to silence or counsel."  (*People v. Suff* (2014) 58 Cal.4th 1013, 1068, quoting *People v. Stitely* (2005) 35 Cal.4th 514, 535, italics omitted; see also *Davis v. United States* (1994) 512 U.S. 452, 459 (*Davis*).)  A request is unambiguous only if the suspect "'articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'"  (*Nelson*, *supra*, 53 Cal.4th at p. 376, quoting *Davis*, at p. 459.)

Defendant acknowledges that he waived his *Miranda* rights, but argues that he thereafter invoked his right to counsel when he told the interviewing detective:  "One doesn't have to wait around to see if I am given an attorney to tell her, uh, I mean, the attorney.  To see what the attorney tells me."  A reasonable police officer would not understand this statement to be a request for counsel.  The interviewing detective in this case nevertheless tried to clarify what defendant wanted by asking him three times, "do you want an attorney or do you want to speak with me?"  Defendant finally replied, "well, yes, to get it over with,"  and kept talking to the detective.

Defendant asserts that he was misled by the detective, who at one point stated, "You are going to be given an attorney *when you go to court*"; defendant contends that this led him to believe he did not have a right to have an attorney present *during the interview*.  It is unclear how (or whether) this statement *by the officer* affects the clarity with which *defendant* says he invoked his right to counsel.  In any event, this argument ignores that defendant was advised at the outset of the interview that he had "the right to have an attorney present here *while we speak*", and that the statement he alleges is misleading was sandwiched among the detective's three attempts to clarify what

4

defendant wanted, each of which focused on whether he wanted to speak with the detective without the attorney being present.

## B. Sixth Amendment

A suspect also has the Sixth Amendment right not to be questioned regarding any offense for which "adversary judicial criminal process has been initiated." (*People v. Collins* (2010) 49 Cal.4th 175, 205.) This process is initiated by the filing of formal charges, the filing of an information, the return of an indictment, arraignment or a preliminary hearing. (*Rothgery v. Gillespie County* (2008) 554 U.S. 191, 198.) Defendant's interviews preceded any charging, so his Sixth Amendment right had yet to attach.

## C. Due process

The due process clause bars the admission of any involuntary statement obtained when coercive police tactics overbear the suspect's will. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1086 (*McCurdy*).) In evaluating voluntariness, courts look to the totality of the circumstances and ask whether the confession is the product of "'"rational intellect and a free will.'"'" (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1401, quoting *Lynumn v. Illinois* (1963) 372 U.S. 528, 534.) A confession induced by threats or promises of leniency is involuntary (*id.* at p. 1401), but "[p]olice trickery . . . does not, by itself, render a confession involuntary" (*People v. Mays* (2009) 174 Cal.App.4th 156, 164-165; *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1240 (*Musselwhite*) ["Lies told by the police to a suspect under questioning can affect the voluntariness of an ensuing confession, but they are not per se sufficient to make it involuntary."]). A confession following a police ruse is involuntary only if there is "a proximate causal connection between the deception or subterfuge and the confession." (*Musselwhite*, at p. 1240, italics omitted.)

Defendant's confession came after the detective's false report of a DNA match. However, "but for" causation is "insufficient" to establish involuntariness (*Musselwhite*, *supra*, 17 Cal.4th at p. 1240), and here the requisite proximate causal link is missing. Defendant continued to deny any wrongdoing after the false report. More to the point,

his eventual confession was accompanied by his repeated explanation that he had succumbed to temptation—a reason having nothing to with the DNA match.

There is also nothing coercive in the timing or duration of the two interview sessions. The interviews were relatively brief in duration, and did not follow any deprivation of food, water, sleep, or bathroom breaks. Moreover, they were conducted by a single detective who spoke with defendant in his native language.

## II. New trial motion

Defendant sought a new trial, citing "newly discovered evidence" that Daughter had lied to an elementary school teacher years before about finding her grandparents dead in their bed one morning. The trial court denied the motion because, in its view, this additional impeachment evidence would not have affected the jury's verdict in light of defendant's confession. We review this ruling for an abuse of discretion. (*McCurdy*, *supra*, 59 Cal.4th at p. 1108.)

A trial court reviewing a motion for new trial on the basis of newly discovered evidence is to examine: (1) whether the evidence is newly discovered; (2) whether it could have been obtained prior to trial; (3) whether it is cumulative; (4) whether it would "render a different result probable on a retrial"; and (5) whether the evidence proffered is "the best evidence" possible. (*People v. Howard* (2010) 51 Cal.4th 15, 43.) In this case, the facts regarding Daughter's alleged lie to her elementary school teacher existed years before defendant's trial. The evidence was also cumulative; several witness testified that Daughter lied about the very incidents charged against defendant. Because this evidence is cumulative and in light of defendant's confession, the trial court did not abuse its discretion in determining that a different result on retrial was not probable, or in denying the motion.

## III. Ineffective assistance of counsel

Defendant lastly contends that his trial counsel was constitutionally ineffective for not introducing the elementary school teacher's testimony. To prevail on this claim, defendant must establish that (1) his counsel's performance was deficient, and (2) "'there is a reasonable probability that, but for counsel's unprofessional errors and/or omissions,

6

the trial would have resulted in a more favorable outcome.'  [Citation.]"  (*People v. Carrasco* (2014) 59 Cal.4th 924, 982 (*Carrasco*); see also *Strickland v. Washington* (1984) 446 U.S. 688.)

　　We reject defendant's claim for two reasons.  First, we are required to conclude that counsel's performance was adequate where, as here, defendant raises this issue during the direct appeal of his conviction and the "'''"record on appeal sheds no light on why counsel acted or failed to act in the manner challenged . . . .'"'''  (*Carrasco*, *supra*, 59 Cal.4th at p. 982, quoting *People v. Tello* (1997) 15 Cal.4th 264, 266.)  Second, and as explained above, the teacher's testimony is cumulative and remote; it is not reasonably probable that its introduction would have resulted in a different outcome.

## DISPOSITION

　　The judgment is affirmed.

　　<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


　　　　　　　　　　　　　　　　_____, J.
　　　　　　　　　　　　　　　　HOFFSTADT

We concur:


_____, Acting P. J.
　　ASHMANN-GERST


_____, J.
　　CHAVEZ


7