# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70027

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2018

Lyle W. Cayce
Clerk

MELISSA ELIZABETH LUCIO,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:13-CV-125

Before HIGGINBOTHAM, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

    Melissa Elizabeth Lucio, a state prisoner sentenced to death in 2008 for the murder of her two-year-old daughter, Mariah, seeks a certificate of appealability ("COA") with respect to the following claims: (1) deprivation of her Sixth Amendment right to counsel relating to (a) court-ordered therapy sessions through Child Protective Services ("CPS"), and (b) a post-arrest guilty plea to a separate offense of driving while intoxicated ("DWI"); (2) ineffective

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70027

assistance of counsel at the guilt-innocence phase of trial for (a) failure to file a pre-trial motion to suppress custodial statements, and (b) failure to adequately investigate and present available evidence in support of her defense; and (3) deprivation of her constitutional right to present a complete defense at the guilt-innocence phase of trial. We conclude that reasonable jurists could debate only the district court's resolution of issue 3. Accordingly, we GRANT a COA on issue 3 and DENY a COA on issues 1 and 2.

## I.  Background

The facts of the offense are described in detail in the opinion of the Texas Court of Criminal Appeals, so we address them only briefly. *See Lucio v. State*, 351 S.W.3d 878, 880–91 (Tex. Crim. App. 2011). The chief forensic pathologist who conducted Mariah's autopsy testified that the condition of Mariah's body indicated that she had been severely abused, and her cause of death was "blunt force head trauma," which would have occurred within twenty-four hours of her death.

On the night that Mariah was pronounced dead, February 17, 2007, Lucio was taken into custody, informed of her *Miranda*[1] rights which she agreed to waive, and then questioned by investigators for several hours. Lucio claimed that Mariah had fallen down some stairs. She eventually admitted to beating Mariah and inflicting all of Mariah's visible injuries except for two minor scratches. Lucio also stated that Mariah was sick on the day she died: she refused to eat, her jaw would lock up, her breathing was heavy, and she slept all day. This account of Mariah's sickness was consistent with the symptoms of blunt force head trauma subsequently described by the State's medical expert. Shortly after Mariah's death, Lucio's remaining children were removed by CPS and placed in foster care.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

No. 16-70027

Lucio was arrested on February 18, 2007, and then brought before a magistrate pursuant to Texas Code of Criminal Procedure article 15.17. She was formally indicted on May 16, 2007, and appointed counsel on May 31, 2007, shortly before her arraignment that same day. Between the time of her arrest for murder and the appointment of counsel for that case, Lucio pleaded guilty to a prior unrelated DWI offense from 2006.

While Lucio was awaiting trial in prison, the CPS court ordered her to visit with a therapist and take parenting classes, in addition to ordering visitation with some of her children. The CPS therapist talked with Lucio about her social history; discussed the circumstances of Mariah's death, Lucio's subsequent treatment in the legal system, and her mental health; and recommended additional sessions to help Lucio with coping and problem solving skills. Lucio's counsel did not receive prior notice of the CPS therapy sessions.

At trial, the prosecution asked the jury to infer that Lucio caused the fatal blow responsible for Mariah's death because it was consistent with her history of abusing Mariah. The defense argued that Mariah's death was caused by falling down stairs, not by Lucio. A neurosurgeon called as a medical expert for the defense testified that the blunt force trauma causing Mariah's death could have resulted from falling down stairs. Moreover, during closing arguments, the defense counsel argued that the State failed to overcome reasonable doubt because evidence indicated that Mariah's fatal injury could have resulted from falling down stairs and the State failed to produce any evidence indicating otherwise.

At the punishment phase of the trial, Lucio's mitigation experts provided extensive testimony covering Lucio's troubled childhood, sexual abuse by her mother's boyfriend, physical abuse by her siblings, lack of an aggressive history, physical and emotional abuse from her husband and subsequent

3

No. 16-70027

boyfriend, cocaine addiction, history of homelessness, history of having children at a young age, characteristics of a battered woman, low-average range IQ, afflictions from depression and post-traumatic stress disorder, and low probability of reoffending in a prison setting.  The State used the therapist's written record of his conversations with Lucio indirectly to impeach Lucio's mitigation experts regarding Lucio's history of sexual abuse.  The State first sought to introduce as evidence the therapist's "Confidential Treatment and Progress Notes."  However, the state trial court concluded that the notes were inadmissible hearsay.  The State therefore referenced the record by way of a hypothetical, asking the mitigation experts how they would respond, or if they would be surprised, upon finding out that Lucio had told the therapist that she had not been sexually abused as a child.

The Texas Court of Criminal Appeals denied relief on both Lucio's direct appeal, *Lucio*, 351 S.W.3d at 910, and habeas appeal, *Ex Parte Lucio*, No. WR-72,702-02, 2013 WL 105179, at *1 (Tex. Crim. App. Jan. 9, 2013).  Thereafter, Lucio filed an application for federal habeas relief pursuant to 28 U.S.C. § 2254 in federal district court.  The district court denied relief and also denied a COA. *Lucio v. Davis*, No. B-13-125 (S.D. Tex. Sept. 28, 2016).  Lucio filed a timely notice of appeal.

## II.  Standard of Review

The standards for a COA are well settled.  Lucio must demonstrate that her claims of constitutional violations were such that jurists of reason could debate the district court's disposition of the claims or that the claims were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  We are charged with reviewing the case only through this prism and thus making only a general assessment of the merits. *Id.* at 336–37; *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).  However, we must approach the debatability of the district court's decision through the lens of the

4

No. 16-70027

Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Miller-El*, 537 U.S. at 336.

Under AEDPA, where the state determined the issues on the merits, federal habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). An unreasonable application of clearly established federal law means that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Said another way, "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)). "This is 'meant to be' a difficult standard to meet." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (quoting *Harrington,* 562 U.S. at 102), *reh'g denied*, 138 S. Ct. 35 (2017) (mem.).

A factual determination made in state court "shall be presumed to be correct" in a subsequent federal habeas proceeding and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)). "The clear-and-convincing evidence standard of § 2254(e)(1)—which is arguably more deferential to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains

5

to the state court's decision as a whole." *Id.* (citations and internal quotation marks omitted).

We must also assess the COA question in a case asserting ineffective assistance of counsel in light of the well-established standards of *Strickland v. Washington*, 466 U.S. 668 (1984), which are deferential to strategic decisions of counsel. However, in a death penalty case, doubts about granting a COA should be resolved in favor of a grant. *Escamilla v. Stephens*, 749 F.3d 380, 387 (5th Cir. 2014).

## III.  Discussion

### A.  Right to Counsel

Following the commencement of adversary judicial proceedings in a criminal case, the Sixth Amendment entitles a defendant to counsel at "critical stages" of the criminal proceedings. *Rothgery v. Gillespie*, 554 U.S. 191, 212–13 (2008). "The cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary." *Id.* at 212 n.16 (internal quotation marks, citations, and ellipsis omitted). Lucio seeks a COA based upon two alleged violations of her right to counsel: (1) failure to notify Lucio's appointed counsel in advance of CPS therapy sessions that were used at trial to impeach both of Lucio's mitigation experts on allegations of her childhood sexual abuse; and (2) an unreasonable delay in appointment of counsel resulting in an uncounseled guilty plea to a separate DWI misdemeanor offense that was briefly referenced in questions to one of her mitigation experts but which she contends was used as evidence of future dangerousness.

6

1. CPS Therapy Sessions

As to the first alleged violation, the federal district court determined that the state habeas court reasonably concluded that the therapy sessions did not implicate Lucio's Sixth Amendment rights. Lucio maintains that the CPS therapist was part of the state prosecutorial team. In *Maine v. Moulton*, the Supreme Court held that "the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." 474 U.S. 159, 171 (1985). "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel *as is the intentional creation of such an opportunity*." *Id.* at 176. However, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Id.*

The state habeas court found that the CPS therapist was not working in concert with law enforcement to investigate Lucio's alleged crime and that the interviews were non-investigatory. Lucio has failed to cite evidence rebutting this factual finding, let alone clear and convincing evidence. Furthermore, Lucio points to no evidence that law enforcement colluded with the CPS court in ordering mental-health counseling for Lucio or otherwise exploited that opportunity to confront Lucio without counsel being present. Thus, on this record, jurists of reason could not debate whether the district court erred in its determination on this issue. *See Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986) ("As our recent examination of this Sixth Amendment issue in *Moulton* makes clear, the primary concern . . . is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation.").

Alternatively, Lucio asserts that her mental-health counseling is the same situation as a pretrial psychiatric examination that the Supreme Court

No. 16-70027

held in *Estelle v. Smith* to be a "critical stage" of the proceedings requiring prior notice to counsel. *See* 451 U.S. 454, 469–71 (1981). Federal law is not clearly established when state courts must extend Supreme Court precedent before applying it. *Woodall*, 134 S. Ct. at 1706. However, application of federal law to "new factual permutations" can still be clearly established if "the necessity to apply the earlier rule [is] beyond doubt." *Id.* It must be "so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* at 1706–07 (quoting *Harrington,* 562 U.S. at 103).

We will assume arguendo that the question of whether Lucio has stated an error regarding application of *Estelle* to these facts is debatable by jurists of reason. We nonetheless conclude that a COA on this issue is not appropriate because jurists of reason could not debate that any error "had substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Accordingly, we DENY a COA on Lucio's right to counsel claim based on the CPS therapy sessions.[2]

2. DWI Conviction

We also decline to grant a COA on Lucio's remaining claim relating to the unreasonable delay in appointment of counsel resulting in an uncounseled guilty plea to a DWI misdemeanor offense. The state habeas court concluded

---

[2] Lucio also asserts in her reply brief an *Estelle*-based Fifth Amendment claim for failure to read her *Miranda* warnings prior to the therapy sessions. However, in her initial brief she repeatedly stated that her *Estelle*-based claim was grounded in the Sixth Amendment. Because she raises this claim for the first time in her reply brief, that issue is waived. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). Even if it were not waived, we would not grant a COA on this issue for the same reasons we decline to do so for her *Estelle*-based Sixth Amendment claim. Moreover, the Supreme Court has repeatedly stated that failure to properly warn of *Miranda* rights does not preclude the use of voluntary testimony for *impeachment purposes. See United States v. Patane*, 542 U.S. 630, 639 (2004) (plurality opinion); *Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *Harris v. New York*, 401 U.S. 222, 226 (1971).

that Lucio failed to show any prejudice as to the DWI conviction and that trial counsel's failure to object to punishment phase questions about the conviction was strategic because it would have come in anyway.  The federal district court concluded that Lucio's Sixth Amendment right to counsel did not extend to the DWI case and thus the state habeas court's determination was reasonable.

Even if there were a violation,[3] Lucio fails to meet her burden of showing that jurists of reason could debate the reasonableness of the state court's determination that it did not prejudice her case.  Lucio points to nothing in the record indicating the prior conviction was introduced as substantive evidence on the issue of future dangerousness.  Rather, the prosecution merely asked one of the mitigation experts whether she had learned of the DWI conviction.[4]  The mitigation expert answered, "yes," diminishing any attempt to undermine her knowledge of Lucio's history.  No additional details about the DWI conviction itself were disclosed, not even how old the conviction was.  Lucio has failed to show that jurist of reason could debate whether briefly asking one of

---

[3] The Supreme Court has expressly declined to determine the appropriate standard for when a delay alone violates the Sixth Amendment right to counsel. *Rothgery*, 554 U.S. at 213.  *Rothgery* involved a six-month delay, thus jurists of reason could not debate the potential for fairminded disagreement as to whether Lucio's three-month delay violated her Sixth Amendment right to counsel.  *See id.*  Therefore, to be entitled to a COA, Lucio's unreasonable delay claim must be based on denial of counsel at a critical stage of the proceedings.  *See id.* at 212–13.  The only potential critical stage that Lucio identifies is her uncounseled guilty plea to the DWI charges.  Although Lucio identifies Supreme Court precedent indicating that an uncounseled guilty plea to the DWI charges was a "critical stage" of her DWI criminal proceedings, *see White v. Maryland*, 373 U.S. 59, 60 (1963), she does not identify any Supreme Court precedent indicating that her DWI guilty plea was a "critical stage" of her separate criminal proceedings for the murder of Mariah, *see McNeil v. Wisconsin*, 501 U.S. 171, 175–78 (1991) (stating that the Sixth Amendment is "offense specific" and provides protection "with respect to a particular alleged crime").

[4] The prosecution also asked the mitigation expert whether Lucio mentioned using an alias in connection with the DWI offense, and whether she would be "surprised" to learn that Lucio used an alias.  However, Lucio's use of an alias in connection with the DWI offense occurred prior to the attachment of her Sixth Amendment right to counsel for criminal proceedings relating to the murder of Mariah.  Thus, any reference to her use of an alias would not implicate her Sixth Amendment right to counsel in this case.  *See McNeil*, 501 U.S. at 175.

two mitigation experts about her awareness of an unrelated, non-violent prior conviction "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* We therefore DENY the COA on her DWI guilty plea claim.

**B. Right to Effective Assistance of Counsel**

To show a deprivation of effective assistance of counsel under the Sixth Amendment, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" and that the deficient performance "deprive[d] [her] of a fair trial." *Strickland*, 466 U.S. at 687–88. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689; *see also Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). Accordingly, we have "repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

1. Failure to Move to Suppress Custodial Statements

Lucio argues that her trial counsel was ineffective in failing to move to suppress as involuntary her statements about abusing Mariah made during her custodial interrogation.[5] More specifically, Lucio contends that her incriminating statements were the result of psychological coercion and thus

---

[5] In addition to a Sixth Amendment violation, Lucio also contends that her counsel's failure to move to suppress the custodial statements violated the Eighth and Fourteenth Amendments. However, because the Eighth and Fourteenth Amendment claims were not raised below, we will not consider them for the first time on appeal. *See Yohey*, 985 F.2d at 225.

10

inadmissible under the Fifth Amendment, which could have been supported by expert testimony.[6]

A defendant's statement "during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (alteration in original) (quoting *North Carolina v. Butler,* 441 U.S. 369, 373 (1979)). The "waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 382–83 (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)). "[T]he law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385. "There is no requirement that a suspect be continually reminded of his *Miranda* rights following a valid waiver." *Soffar v. Cockrell*, 300 F.3d 588, 593 (5th Cir. 2002).

Lucio was informed of her Miranda rights, indicated she understood them, and then proceeded to answer the officers' questions. The state habeas court concluded, as a matter of law, that law enforcement did not coerce any of Lucio's statements, that Lucio's trial counsel was not deficient, that Lucio failed to show the outcome would be different even had trial counsel moved to suppress the statements, and that Lucio failed to show that trial counsel's actions were not sound trial strategy. The federal district court concluded that

---

[6] Before both the state and district habeas courts Lucio also argued that she invoked her right to remain silent during the interrogation. Because Lucio does not make this argument on appeal, it is abandoned. *See Yohey*, 985 F.2d at 224–25. We address only the psychological coercion argument made in the brief on appeal. *See id.*

No. 16-70027

the state court reasonably determined that there was no Fifth Amendment violation and thus no ineffective assistance of counsel. Lucio has not met her burden of showing that reasonable jurists could debate this conclusion.

We conclude that no jurist of reason could debate that the state habeas court's decision was not an unreasonable application of clearly established federal law as determined by the Supreme Court and did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. We DENY a COA on this claim.

2. Failure to Investigate and Present Evidence

Lucio also contends that her trial counsel was ineffective because he failed to investigate and present certain evidence supporting her defense, and this omission was not based on any reasonable trial strategy. Specifically, she argues that her counsel was deficient in calling only a neurosurgeon to challenge the source of the blunt force trauma to Mariah's head instead of also calling a forensic pathologist to challenge the source of Mariah's other injuries. Lucio additionally argues that her trial counsel was deficient in retaining the medical expert late in the process at the recommendation of her co-defendant's counsel and failing to present additional evidence supporting Lucio's defense that she was not dangerous and did not abuse her children.[7]

The state habeas court determined that trial counsel's decision to call only a neurosurgeon as an expert medical witness was part of the defense strategy to show that the fatal blow was consistent with falling down the stairs. It also determined that Lucio failed to show any harm in either the timing of retaining the medical expert or the failure to retain a forensic pathologist, and any additional evidence showing that Lucio was not dangerous to her children

---

[7] These were the only arguments that Lucio adequately briefed. Any additional arguments made before the state habeas court or federal district court as to trial counsel's ineffective assistance are abandoned. *See Yohey*, 985 F.2d at 224–25.

12

would have been of limited value given her confession to abusing Mariah. The state habeas court further explained that it was sound trial strategy not to offer an alternative explanation for Mariah's injuries, but instead deny only that Lucio inflicted the fatal blow, because it would have been contradicted by Lucio's own admission to causing nearly all of Mariah's injuries. *See, e.g.*, *Quarterman*, 566 F.3d at 538–39 (concluding, inter alia, that petitioner failed to establish prejudice as to an uncalled expert witness whose testimony would have been contradicted by petitioner's own statements about her involvement in the injury of two children). The district court concluded that the state habeas court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court and did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. Because we conclude that reasonable jurists could not debate the district court's conclusion, we DENY a COA on this claim.

## C. Right to Present a Complete Defense

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)). Defendants are deprived of this right when evidence rules "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (alteration in original) (internal quotation marks and citation omitted). Even if an evidentiary rule itself is not arbitrary or disproportionate to its purposes, a specific application of the rule can nevertheless violate the right to present a complete defense if "it does not rationally serve the end that [the rule] . . . [was] designed to promote." *See id.* at 327–31. The Supreme Court has further explained that, absent a valid justification, the state may not "exclude competent, reliable evidence bearing

13

No. 16-70027

on the credibility of a confession when such evidence is central to the defendant's claim of innocence." *Crane,* 476 U.S. at 690; *see also Green v. Georgia,* 442 U.S. 95, 97 (1979) (holding that excluded evidence violated the Due Process Clause because it was "highly relevant to a critical issue . . . and substantial reasons existed to assume its reliability"); *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983) (noting that a state court evidentiary error is subject to habeas relief if "it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause").

Lucio contends that the state habeas court's exclusion of two expert witnesses deprived her of her constitutional right to present a complete defense. She points to evidence indicating that her proffered experts would have testified that (1) her patterns of behavior influenced her answers during the interrogation, and (2) her psychological functioning caused her to take the blame for Mariah's injuries, thus undermining the credibility of her confession to inflicting nearly all of Mariah's injuries. Lucio's confession was critical to the state's theory of the case that Lucio's repeated abuse of Mariah culminated in a fatal blow.

The state habeas court found that Lucio's expert was unqualified to testify about Lucio's body language and patterns of behavior because she had no relevant "specialized experience, knowledge, or training." The federal district court concluded that Lucio failed to rebut this finding. However, Lucio points to evidence indicating that her expert had formal training and professional experience in interpreting body language and patterns of behavior as a mental health clinician. The state habeas court also determined that testimony relating to Lucio's psychological functioning was irrelevant to Lucio's guilt or innocence. The federal district court agreed that the evidence was "only tangentially related to the question of Lucio's guilt or innocence" and concluded that its exclusion did not deny Lucio a fair trial. However, Lucio's

14

trial counsel indicated that the testimony related to Lucio's potential to provide a false confession on a critical issue of the prosecution's case.  The State provides no additional justifications for excluding this potentially "competent, reliable evidence bearing on the credibility of [Lucio's] confession." *See Crane,* 476 U.S. at 690.

"[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El,* 537 U.S. at 338.  We, therefore, conclude that Lucio's claim that she was deprived of her right to present a complete defense is debatable enough to deserve encouragement to proceed further and GRANT a COA on this issue.

## IV.  Conclusion

We GRANT a COA on the question of whether the exclusion of Lucio's proffered experts on the credibility of her confession violated her constitutional right to present a complete defense.  We will allow for additional briefing now that a COA has been granted; however, the parties should avoid repetition and, if they wish, may rest on their briefs.  *See, e.g., Butler v. Stephens,* 600 F. App'x 246, 248 n.4 (5th Cir. 2015) (per curiam).  Lucio should file any additional briefing on this issue within thirty days of this order, and the State may respond within thirty days thereof.  Extensions will be granted only by order of this panel for exceptional circumstances shown.

All other relief is DENIED.