

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,  )  *Opinion issued April 30, 2024*
 )
          Respondent,  )
 )
v.  )  No. SC100170
 )
ROBERT A. WOOLERY,  )
 )
          Appellant.  )

## APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY
**The Honorable Robert L. Koffman, Judge**

Robert Anthony Woolery appeals from a judgment convicting him of two counts of delivery of a controlled substance under section 579.020.[1] He raises five points on appeal. In his first two points, Woolery argues the circuit court plainly erred in failing to appoint counsel at his initial appearance because arraignments (Point I) and bail hearings (Point II) are critical stages requiring the presence of counsel. In his third point, Woolery argues the circuit court erred in failing to preserve a transcript or recording of his arraignment, thereby denying him meaningful appellate review of his right-to-counsel claims. For his fourth point, Woolery asserts the circuit court plainly erred by misapplying the law when

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016.

sentencing him to imprisonment rather than ordering a mental examination. In his final point, Woolery claims the circuit court erred in overruling his motion to suppress and allowing the admission of evidence that he possessed and sold a controlled substance because the detectives lacked authority to respond to emergency situations outside the Sedalia city limits. Finding no error, this Court affirms.[2]

## Factual and Procedural Background

In 2021, the Sedalia police department's crime resolution unit developed a plan to focus on low-to-mid-level drug dealers using vetted confidential informants (CI). Woolery was identified as a subject of interest in the investigation. The unit organized two "controlled buys"[3] from Woolery, one on June 29, 2021, and another on July 12, 2021. The unit was able to conduct the controlled buys through a CI who informed Sedalia police that he could purchase drugs from a man named "Tony." The CI later identified Woolery as Tony.

Both buys occurred in the same manner. The CI first exchanged text messages with Woolery to set up each buy. Detectives with the unit then searched the CI's person and vehicle, issued the CI a recording device, and followed the CI to the location where the CI and Woolery agreed to meet. The detectives observed the CI's vehicle pull into a driveway

---

[2]  Portions of this opinion are taken from the court of appeals opinion authored by Judge Karen King Mitchell.

[3]  In a controlled buy, Sedalia police meet with the CI, document any messages between the CI and a subject of interest arranging the purchase, issue the CI documented purchase money, search the CI's person and vehicle, and give the CI a recording device. A surveillance team then observes the entire transaction between the CI and the subject of interest.

on Carlene Drive and Woolery enter the vehicle. The CI then backed the vehicle out of the driveway, turned north on Washington Street, turned west on 32nd Street, and traveled a short distance before returning along the same route to the driveway on Carlene Drive, where Woolery exited the vehicle.[4]

After each buy, the CI met with the unit for debriefing and produced a bag containing methamphetamine. The record indicates the drug exchange occurred sometime during each drive, though it is unclear whether the vehicle was within city limits when each exchange occurred.[5]

On November 10, 2021, the state charged Woolery by indictment for knowingly delivering a controlled substance, methamphetamine, to a CI working with Sedalia police on two separate occasions. A warrant issued for his arrest on November 12, and bond was set at "$200,000, c/s." Woolery was served with the warrant on November 14.

Woolery appeared before the circuit court via video, without counsel, on November 15. During this appearance, the court arraigned Woolery and accepted his plea of not guilty. The docket sheet does not indicate any action was taken regarding Woolery's conditions of release on November 15.[6] There is no transcript or recording of this appearance.

---

[4] Carlene Drive is outside Sedalia's city limits, which begin at Washington Street and 32nd Street.

[5] The recording device used during the June 29 controlled buy stopped working after two minutes, and the recording device used during the July 12 buy did not indicate when during the drive the exchange took place.

[6] The full docket entry for the November 15 appearance reads: "State appears by PA Sawyer. Defendant appears by Video and without an Attorney. Defendant is formally

A public defender entered an appearance on Woolery's behalf on November 22 and moved for bond reduction on December 3. On December 10, the court received evidence and heard argument on the motion, which the court overruled.

The day before trial,[7] Woolery filed a motion to suppress on constitutional grounds any evidence that he possessed and sold a controlled substance, arguing the Sedalia detectives lacked jurisdiction to arrange drug buys outside the city limits. The court took the motion with the case.

After trial, the circuit court found Woolery guilty on both counts and issued findings of fact and conclusions of law overruling Woolery's motion to suppress. The circuit court concluded the controlled buys did not violate Woolery's constitutional rights because the Sedalia police were authorized to conduct the operations in Sedalia, which included 32nd Street, and Woolery voluntarily got into the CI's vehicle and drove to 32nd Street to conduct the transactions.

The circuit court sentenced Woolery, as a persistent drug offender, to 15 years on each count, with the sentences running concurrently. After sentencing, the circuit court questioned Woolery on trial counsel's performance. Woolery indicated trial counsel failed to request a mental examination, though he failed to explain why doing so would have been necessary or describe any history of mental illness that would have supported such a request. Woolery appeals.

---

arraigned and a plea of not guilty is entered. Cause continued by agreement to December 6, 2021, at 130pm [sic]. Defendant ordered to appear."

[7] Woolery waived his right to a jury trial and was tried by the circuit court.

**Points I and II – the Circuit Court Did Not Plainly Err in Failing to Appoint
Counsel for Woolery's November 15 Hearing**

Woolery's first two points contend the circuit court plainly erred in failing to appoint counsel to represent him at his November 15 appearance because Rule 31.02(a) confers a duty on the circuit court to appoint counsel at the initial appearance, in that an arraignment (Point I) and a bail hearing (Point II) are critical stages of the prosecution triggering the constitutional right to counsel. It appears Woolery's Points I and II present the following four issues for this Court's consideration: (1) whether Rule 31.02(a) confers a duty on the circuit court to appoint counsel for indigent defendants at the initial appearance, (2) whether an initial appearance is a critical stage of the prosecution triggering a defendant's constitutional right to counsel, (3) whether an arraignment is a critical stage of the prosecution triggering a defendant's constitutional right to counsel, and (4) whether a bail hearing is a critical stage of the prosecution triggering a defendant's constitutional right to counsel.

Woolery concedes he failed to raise the arguments contained in Points I and II below. Accordingly, he requests plain error review of these claims. Whether an unpreserved claim is statutory, constitutional, structural, or of some other origin, "Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim … is evaluated by this Court's plain error framework without exception." *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) (quotations omitted). Moreover, "[p]lain error review is discretionary." *Id.* (quotations omitted).

In conducting plain error review, the Court conducts a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Id.* (quotation omitted). Moreover, "[t]o obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative." *Id.* (quotation omitted).

### *Initial Appearances, Arraignments, and Bail Hearings in Missouri*

Because Woolery regards his November 15 appearance as his initial appearance, arraignment, and bail hearing, this Court begins with a brief discussion of each proceeding to determine which classification should be given to his November 15 appearance.

**Initial Appearances**

In Missouri, a felony proceeding[8] is initiated either by a complaint or indictment. Rule 22.01. Thereafter, a circuit court may issue a summons or a warrant for the defendant's arrest. Rule 22.04(a)-(b). If a warrant is issued, a defendant "arrested and confined under the initial warrant" must be brought before the court "for an appearance, as set forth in Rule 22.08" no later than 48 hours, not including weekends and holidays, after the defendant is confined. Rule 22.07.

---

[8] Because Woolery was charged with felonies, this opinion focuses on rules applicable to felonies, but many of these rules also apply to misdemeanors.

Rule 22.08 sets forth the requirements for this initial appearance:

> The court shall inform the defendant of the felony charged, the right to retain counsel, and the right to request the appointment of counsel if the defendant is unable to retain counsel, and the right to remain silent. The court shall also inform the defendant that any statement made by the defendant may be used against the defendant.

Rule 22.08(a). If a defendant is in custody at the initial appearance or appears for the initial hearing after having been released from custody on a warrant, "the court shall inform the defendant of the conditions of release" and that a warrant may be issued if the conditions are violated. Rule 22.08(b)-(c). The court must also advise the defendant of the right to seek modification of the conditions of release. Rule 22.08(b). If the defendant is in custody, the court shall also determine if the defendant can meet the conditions of release, and, if the defendant is unable to meet the conditions, "the court shall advise the defendant of the right to a release hearing pursuant to Rule 33.05." Rule 22.08(c).

**Arraignments**

If a prosecution begins with a complaint, the circuit court must hold a preliminary hearing to determine whether there is probable cause to believe a felony has been committed unless the defendant waives the preliminary hearing. Rule 22.09(a)-(b). An information must be filed within 10 days of a finding of probable cause. Rule 23.03. No preliminary hearing is required if the prosecution was initiated by indictment. *See* Rule 22.09(a) (requiring a preliminary hearing to be held "[a]fter the filing of a felony complaint").

7

A defendant must then be arraigned on the indictment or information. "The purpose of arraignment in Missouri is to ascertain whether defendant is personally before the court so that he may know what is being done in his case and to give him the opportunity to plead." *State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968). Rule 24.01 provides:

> Arraignment shall be conducted in open court. The judge may conduct the arraignment with the defendant appearing by interactive video technology if the defendant is entering a plea of not guilty. The arraignment shall consist of reading the indictment or information to the defendant or stating to him or her the substance of the charge and calling on the defendant to plead thereto. The defendant shall be given a copy of the indictment or information before being called upon to plead.

Because an arraignment consists of "reading the indictment or information to the defendant and calling on him or her to plead thereto," a "proper arraignment" cannot be held prior to the filing of an information or indictment. *State v. Heidbrink*, 670 S.W.3d 114, 134 (Mo. App. 2023).

Consequently, in felony cases initiated by a complaint, a defendant's initial appearance could not include an arraignment, as there is not yet an information or indictment in the proceeding. On the other hand, when the prosecution is initiated by indictment, an arraignment could be conducted at the initial appearance, as the docket entry reflects was done in Woolery's case. There is no rule requiring as such, however, and the arraignment could be conducted sometime after the initial appearance is conducted.

**Bail Hearings**

If the defendant is in custody upon his initial court appearance, the circuit court "shall inform the defendant of the conditions of release, if any, and determine whether the defendant can meet the conditions" during that appearance. Rule 22.08(c). The court

8

"may" modify the conditions of release if the defendant cannot meet them "subject to the right of a victim to be informed of and heard at a bail hearing." *Id.* If a defendant remains in custody following this appearance, the court must advise him of his right to a release hearing under Rule 33.05. *Id.*

Rule 33.05 provides a defendant who remains in detention following the initial court appearance "shall have the defendant's detention or conditions of release reviewed at a hearing by the court subject to the right of a victim to be informed of and heard at the hearing." This bail review hearing must be held "no later than seven days, excluding weekends and holidays, after the initial appearance absent good cause shown by the parties or the court." Rule 33.05. At this hearing, the court "shall determine if the defendant shall be detained or released as provided in Rule 33.01." *Id.*

A bail review hearing under Rule 33.05 does not preclude "a defendant from making subsequent application for review of the defendant's detention or conditions of release under Rule 33.01." *Id.* Indeed, Rule 33.06(a) provides the court may modify the conditions of release at any time "[u]pon motion by the state or by the defendant[.]"

As such, there is no one single bail hearing, and in any given criminal prosecution, there may be multiple bail hearings reviewing the conditions of release. While the court is required under Rule 22.08 to inform an incarcerated defendant at the initial appearance of his conditions of release and determine whether the defendant can meet those conditions, the court need not conduct a full bail review hearing, in which it considers whether to release the defendant pursuant to Rule 33.01. Rather, the circuit court *may* conduct a bail review hearing during the initial appearance under Rule 22.08 (provided that a victim's

9

right to be informed of and heard at such a hearing is satisfied), but it is not required to do so. If the defendant continues to be detained after the initial court appearance, a bail review hearing must be conducted pursuant to Rule 33.05. Said hearing must be held no later than seven days after the initial appearance, excluding weekends and holidays, absent good cause shown by the parties or the court. So, the first mandatory bail hearing does not occur until well after the initial court appearance if the defendant remains in custody. Rule 33.05. Further, the court must otherwise consider bond modification motions as they are filed throughout the case. Rule 33.06.

### *Woolery's November 15 Appearance Was His Initial Appearance and Arraignment; It Was Not a Bail Review Hearing*

Woolery appeared for only one hearing without counsel – the November 15 appearance. Indeed, Woolery's arguments are directed toward only this appearance. Woolery's November 15 appearance was his initial appearance under Rule 22.08, as it occurred one day after he was served with the warrant issued upon the indictment. The docket sheet for this appearance shows that a formal arraignment was also conducted and that Woolery pleaded not guilty. The November 15 appearance, therefore, was both Woolery's initial appearance and arraignment.

Nothing in the record indicates the circuit court considered Woolery's conditions of release at the November 15 appearance or heard any argument regarding release. Nor was the circuit court required to do so under the rules outlined above. Indeed, Woolery concedes his conditions of release were not reviewed until ***after*** counsel was appointed, when the court held a hearing on December 10, 2021, regarding counsel's motion for bond

10

reduction. Because the circuit court did not and, more importantly, was not mandated to consider or review Woolery's conditions of release at his November 15 appearance, this Court holds that appearance did not constitute a pretrial release or bail hearing. Woolery's argument that counsel is constitutionally required at a bail hearing, therefore, is not properly before this Court, and this Court will not address it here.[9]

### *Rule 31.02(a) Does Not Confer a Duty on the Circuit Court*
### *to Appoint Counsel at the Initial Appearance*

Woolery first argues Rule 31.02(a) requires the circuit court to appoint counsel for unrepresented indigent defendants at the initial court appearance. This is plainly untrue. Rule 31.02(a), which applies in both misdemeanor and felony cases, provides:

> In all criminal cases the defendant shall have the right to appear and defend in person and by counsel. If any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the court to appoint counsel to represent him. If after being informed as to his rights, the defendant requests

---

[9] Woolery relatedly argues the circuit court violated Rule 33.05 by failing to conduct a bail review hearing within seven days after the initial appearance and that, had counsel been appointed at the initial appearance/arraignment, Woolery would have had his bond conditions reviewed more promptly. Rule 33.05 provides the deadline to conduct a bail review hearing, however, may be extended by "good cause shown by the parties or the court." Here, counsel entered an appearance within five business days of the initial court appearance and requested a bond reduction a few days later. The motion for bond reduction did not request a hearing and merely requested his bond be reduced. Woolery's case was taken up on December 6, and the case was set for a bond reduction hearing on December 10. Nothing in the record indicates Woolery objected to the circuit court delaying the hearing until December 10. By all accounts, it appears the parties agreed to conducting the release hearing on December 10. Following the December 10 hearing, the circuit court overruled Woolery's request for bond reduction, and he remained in custody. For these reasons, Woolery cannot show any prejudice as a result of this delay. This argument is without merit.

11

to proceed without the benefit of counsel, and the court finds that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel. If at any stage of the proceedings it appears to the court in which the matter is then pending that because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to the defendant, the court shall then appoint counsel. Appointed counsel shall be allowed a reasonable time in which to prepare the defense.

Woolery argues this language requires the circuit court to advise any unrepresented defendant of his right to counsel, conduct an indigency determination if the defendant is unable to obtain counsel, and, if the defendant is determined indigent, appoint counsel on the spot, all at the defendant's initial court appearance. The language of Rule 31.02(a) does not support Woolery's argument.

Rule 31.02(a) expressly contemplates that a defendant may "be without counsel upon his first appearance." In such cases, the rule requires simply that the circuit court advise the defendant of his right to counsel and the court's willingness to appoint counsel if the defendant cannot afford one. The rule, however, does not require the circuit court to appoint counsel **at** the initial court appearance or suspend an initial appearance until counsel has been appointed. Rather, the rule requires the court to appoint counsel **only** upon a showing of indigency.

Moreover, Woolery's argument ignores Missouri's well-settled process for appointing counsel for indigent defendants. Missouri law provides the public defender, not the court, must make the initial indigency determination upon receiving an application for services from the accused. *See* § 600.086.3 (providing "[t]he determination of indigency of any person seeking the services of the state public defender system **shall be**

12

*made by the defender*" after a person claiming such indigency files with the court an affidavit containing the factual information necessary to determine indigency (emphasis added)). A defendant who claims indigency and would like counsel to be appointed must first apply to the public defender for representation via an affidavit filed with the court. The public defender then determines whether the defendant is indigent. It is only *after* the public defender makes that indigency determination, and such a showing is made to the circuit court, that the court's duty to appoint counsel under Rule 31.02(a) is triggered. If the defendant has not yet been determined indigent by the public defender at the time of the initial appearance, then he is not – or, at least, not yet – entitled to the appointment of counsel under the language of Rule 31.02(a).

Woolery concedes the public defender had not yet determined he was indigent at the time of his November 15 appearance. The circuit court, then, had no duty to appoint counsel under Rule 31.02(a) at or prior to his initial appearance before the court.

### In Missouri, an Initial Appearance under Rule 22.08 Is Not a Critical Stage Triggering a Defendant's Constitutional Right to Counsel

Woolery next argues counsel was required at his November 15 appearance because an initial appearance conducted pursuant to Rule 22.08 is a critical stage triggering the right to counsel under the Sixth Amendment. The "Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 606 (Mo. banc 2012) (quotation omitted). The United States Supreme Court has defined critical stages as "proceedings between an individual and agents of the [s]tate," whether formal or informal, that "amount

13

to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or meeting his adversary[.]'" *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 n.16 (2008) (alteration omitted). Critical stages are "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975).

In Missouri, an initial appearance under Rule 22.08 does not involve a "trial-like confrontation," nor would the absence of counsel at an initial appearance impair defense on the merits. Under the rules outlined above, during an initial appearance the circuit court must simply inform the defendant of matters related to the pending charges, the defendant's rights, and conditions of release. Rule 22.08. The circuit court must also determine if the defendant will meet the conditions of release if the defendant appears in custody. Rule 22.08(c). A defendant is not required to enter a plea or assert any rights at an initial appearance; instead, he need only inform the circuit court of his preference for representation.

Although the United States Supreme Court has not addressed the specific question of whether an initial appearance is a critical stage, its language in *Rothgery* indicates it would not consider an initial appearance under Rule 22.08 to be a critical stage. *Rothgery* held "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger **attachment** of the Sixth Amendment right to counsel." 554 U.S. at 213 (emphasis added). The Supreme Court went on to hold "counsel must be appointed within a reasonable time **after** attachment to allow for adequate representation

14

at any critical stage before trial, as well as at trial itself." *Id.* at 212 (emphasis added).

Because the Supreme Court held counsel need be appointed only within a reasonable time

***after*** an initial appearance, it necessarily follows that, under *Rothgery*, an initial appearance

would not be considered a critical stage requiring counsel's presence.

As such, this Court holds an initial appearance under Rule 22.08 is not a critical

stage of the prosecution – a defendant is not required to enter any plea, assert any right or

defense, or otherwise engage in a "trial-like confrontation" with the state at this perfunctory

appearance, nor would the absence of counsel at this appearance impair a defense on the

merits.

### *In Missouri, an Arraignment During Which a Defendant Pleads Not Guilty Is Not a Critical Stage of the Prosecution Triggering a Defendant's Constitutional Right to Counsel*

As previously explained, Woolery's November 15 appearance was also his formal

arraignment, at which he entered a plea of not guilty. This brings the Court to the question

of whether the Sixth Amendment guarantees a defendant the right to counsel at an

arraignment in which a plea of not guilty is entered.[10] In support of his argument that the

answer to this question is yes, Woolery principally relies on dicta from this Court's opinion

in *Waters*, in which the Court noted that "[c]ritical stages include **arraignments**,

postindictment interrogations, postindictment lineups, ... the entry of a guilty plea, as well

---

[10] This Court has explained the entry of a plea of guilty constitutes a critical stage because it can be used against the defendant at trial. *State v. Patrick*, 420 S.W.2d 258, 262 (Mo. 1967).

15

as trial." 370 S.W.3d at 606-07 (second alteration in original) (emphasis added) (quotations omitted).[11]

In noting that critical stages include arraignments, *Waters* quoted *Missouri v. Frye*, 566 U.S. 134 (2012). *Frye*, in turn, cited a case decided under Alabama law, where arraignment was undeniably a critical stage due to a number of defenses that must be pleaded at arraignment or risk being irretrievably lost. *Frye*, 566 U.S. at 140 (citing *Hamilton v. Alabama*, 368 U.S. 52, 53-54 (1961) (explaining "[a]rraignment under Alabama law is a critical stage in a criminal proceeding" because "the defense of insanity must be pleaded, or the opportunity is lost"; "[p]leas in abatement must also be made at the time of arraignment[; and] motions to quash based on systematic exclusion of one race from grand juries, or on the ground that the grand jury was otherwise improperly drawn, must be made" (citations omitted))). In other words, the Supreme Court in *Hamilton* determined an arraignment in Alabama is a critical stage because "[w]hat happens there may affect the whole trial." 368 U.S. at 54. But *Hamilton* explicitly acknowledged that,

---

[11] "Statements are obiter dicta if they are not essential to the court's decision of the issue before it." *Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo. App. 2003) (quotation omitted). While dicta can be persuasive, "it is not precedent that is binding upon [this Court]." *Id.* The "key issue in dispute" in *Waters* was whether the duty of public defenders to provide a defense to indigent defendants requires them to accept a judge's appointment to act as counsel no matter the size of their existing caseload and their ability to provide effective assistance. 370 S.W.3d at 605. In analyzing this issue, the Court weighed a public defender's statutory duty to provide legal services to eligible persons with the right to effective assistance of counsel under the Sixth Amendment. *Id.* at 605-07. It was during this analysis that the Court offhandedly noted that critical stages include arraignments. *Id.* at 607. This statement was not essential to the Court's resolution of the main question presented and, therefore, is not binding precedent.

16

while arraignments in some jurisdictions, such as Alabama, may constitute critical stages, arraignments in others may not. *Id.* at 54 n.4.

As *Hamilton* recognized, a court must look to the underlying nature of the proceeding to determine whether "[w]hat happens there may affect the whole trial[.]" *Id.* at 54. Indeed, the United States Supreme Court has been clear that the question is whether the proceeding, regardless of its label, involves "trial-like confrontations" and whether the lack of counsel would "impair defense on the merits." *Rothgery*, 554 U.S. at 212 n.16; *Gerstein* 420 U.S. at 122.

An arraignment in Missouri includes a reading of the charges to the defendant, giving him a copy of the charging document, and asking him to enter a plea to the charges. Rule 24.01. This Court has held "[t]he right to assert any defense or objection is preserved and is not irretrievably lost" if not asserted at arraignment. *Donnell*, 430 S.W.2d at 300.[12] Missouri arraignments involve no trial-like confrontation, nor would the absence of counsel at an arraignment in which the defendant pleads not guilty later impair a defense

---

[12]   In their brief supporting Woolery, the Missouri Association of Criminal Defense Lawyers and the National Association of Criminal Defense Lawyers argue arraignment should be considered a critical stage because defendants may lose the right to move for a change of judge or venue if not asserted within 10 days of arraignment. As an initial matter, the mere fact that a defendant has 10 days ***after*** arraignment to assert these motions undercuts Amici's argument – the right to assert these motions is not irretrievably lost if not asserted ***at*** arraignment. *Compare Hamilton*, 368 U.S. at 54-55 (explaining several defenses are "irretrievably lost" if not asserted ***at*** arraignment). Moreover, the right to assert these motions is not even completely lost if a defendant fails to assert them within 10 days of arraignment. Rule 32.09(c) provides that nothing in the rules governing change of venue (Rules 32.03(a) and 32.04(b)) or change of judge (Rule 32.07(a)-(b)) "shall prohibit a judge from ordering a change of venue or change of judge when fundamental fairness so requires."

on the merits. Because Missouri arraignments do not carry the same risks and consequences as those in Alabama, *Hamilton*'s holding is not dispositive here.

When directly faced with the precise question Woolery raises, this Court has repeatedly rejected the argument that counsel is always required at arraignment. *See State v. Grimm*, 461 S.W.2d 746, 753 (Mo. 1971) (The "absence of counsel upon arraignment does not violate constitutional guarant[e]es of [the] right to counsel, absent some action at that stage, prejudicial to the rights of the defendant."); *Collins v. State*, 454 S.W.2d 917, 919 (Mo. 1970) ("[A]rraignment is not a crucial stage of the proceeding when all that is done is enter a plea of not guilty, waiving no rights defendant might otherwise have."); *Montgomery v. State*, 461 S.W.2d 844, 846 (Mo. 1971) ("[T]he absence of counsel at arraignment is not per se a violation of any constitutional right.").

In short, under Missouri law, "arraignment is not a critical stage in a criminal proceeding and thus, absent some prejudice to the accused, the absence of counsel at the arraignment does not violate due process." *State v. Barnard*, 820 S.W.2d 674, 679 (Mo. App. 1991), *abrogated on other grounds by State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993). Accordingly, the only way Woolery's claim may succeed is if he suffered some recognizable prejudice from counsel's absence at his arraignment.[13]

---

[13] In a recent decision, the Missouri Court of Appeals, Eastern District, suggested "that arraignments constitute a critical stage for purposes of the right to counsel" and that "prejudice is presumed where counsel was absent at a critical stage of a criminal proceeding." *State v. Heidbrink*, 670 S.W.3d 114, 133-34 (Mo. App. 2023) (citing *Waters*, 370 S.W.3d at 606-07). Like in *Waters*, this statement was dicta, as the court ultimately determined the proceeding at issue during which the defendant was without counsel was not an arraignment. *Id.* at 134. Nonetheless, for the reasons explained above, the

18

At his November 15 appearance, Woolery was read the charges and he pleaded not guilty. "The entry, without more, of a plea of not guilty, as distinguished from a plea of guilty, without the presence of counsel could not have resulted in any disadvantage to defendant or advantage to the [s]tate." *Montgomery*, 461 S.W.2d at 846. Woolery lost no rights or defenses at his arraignment, and the state gained no advantage over him. *See McClain v. State*, 448 S.W.2d 599, 601 (Mo. 1970) ("In short, the appellant lost nothing and the state gained no advantage by reason of lack of counsel at this stage [(arraignment)] of the proceedings."). Counsel entered an appearance seven days later and could have raised any defenses at that time. Woolery does not allege the absence of counsel at his November 15 appearance deprived him of a fair trial, and this Court does not see how, under the facts of this case, it could have. Woolery did not suffer any prejudice from counsel's absence at arraignment.[14]

In sum, Woolery was not entitled to counsel during his November 15 initial appearance and arraignment, either through Rule 31.02(a) or the Sixth Amendment. Woolery's Points I and II are denied.

---

statements in *Heidbrink* and *Waters* suggesting arraignments are critical stages should no longer be followed.

[14] To avoid any concern that prejudice could develop due to the absence of counsel at arraignment, best practices may warrant refraining from conducting an arraignment at the Rule 22.08 initial appearance when a criminal felony matter is initiated by indictment rather than complaint. In this situation, the arraignment could be delayed until counsel is secured for the defendant.

**Point III – Woolery Was Not Denied Meaningful Review of
His Right to Counsel Claim by the Absence of a Transcript or Recording of
His November 15 Appearance**

In his Point III, Woolery asserts the circuit court erred in failing to preserve a transcript or recording of his arraignment, thereby denying him meaningful appellate review of his right-to-counsel claims. Woolery bases his claim on Rule 31.02(b), which states, "[i]f a defendant in a felony case appears for arraignment without counsel, and if appointment of counsel is waived by the defendant, the reporter shall prepare a transcript of such proceeding and file it in the case."[15] Because his arraignment was not transcribed or recorded, Woolery argues he cannot test the adequacy of the circuit court's compliance with Rule 31.02, specifically with respect to the requirements that the court advise him of its willingness to appoint counsel and secure an intelligent waiver of the right to counsel after informing him of his right to counsel.

As outlined above, Rule 31.02(b) requires the preparation of a transcript of an arraignment when a defendant in a felony case both appears without counsel ***and waives appointment of counsel***. While it is clear from the docket entry of the November 15 appearance that Woolery appeared without counsel, there is no indication whatsoever that he waived appointment of counsel. Rather, it appears Woolery did not waive appointment of counsel, as counsel was appointed seven days later. Rule 31.02(b)'s requirement to prepare a transcript was not triggered, therefore, and the circuit court did not err in failing to prepare one.

---

[15] "[T]he rules of the Supreme Court of Missouri are reviewed *de novo*." *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo. banc 2014).

While "[a]n appealing party is entitled to a full and complete transcript for the appellate court's review[,] … a record that is incomplete … does not automatically warrant a reversal of appellant's conviction." *State v. Middleton*, 995 S.W.2d 443, 466 (Mo. banc 1999). Woolery "is entitled to relief on this point only if he exercised due diligence to correct the deficiency in the record *and* he was prejudiced by the incompleteness of the record." *Id.* As evidenced by the discussion of Points I and II, the absence of a transcript or recording of Woolery's November 15 appearance did not hamper this Court's ability to meaningfully review those points as presented by him. Woolery offers no evidence to support his conclusory assertion that the lack of a transcript or recording was prejudicial. Point III is denied.

## Point IV – Woolery Cannot Establish That Manifest Injustice or a Miscarriage of Justice Resulted from His Sentencing

In Point IV, Woolery claims the circuit court plainly erred by misapplying the law by sentencing him to imprisonment rather than ordering a mental examination. Like in Points I and II, Woolery concedes this claim is not preserved and requests plain error review.

In support of his claim, Woolery cites sections 552.020 and 552.040, which, together, address both lack of mental capacity to assist in his defense and lack of culpability due to mental disease or defect. Woolery's Point IV is broad enough that he could be arguing he lacked culpability in the commission of the crimes or he lacked mental fitness to stand trial. Either way, there is a presumption in favor of mental capacity and fitness, and the burden to overcome that presumption rests with the defendant. §§ 552.020.9,

21

552.030.6, RSMo Supp. 2023. The issue of whether a defendant lacked culpability or the mental capacity to assist in his defense is for the trier of fact to decide upon the introduction of substantial evidence regarding the issue. §§ 552.020.9, 552.030.6, RSMo Supp. 2023.

Woolery offered no evidence indicating he lacked culpability due to a mental disease or defect or that he lacked sufficient present ability to consult with counsel and understand the proceedings against him. Further, the record in this case is devoid of any such evidence. Accordingly, Woolery cannot overcome the first step of plain error review because he fails to "facially establish[] substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Minor*, 648 S.W.3d at 731 (quotation omitted). Point IV is denied.

### Point V – Woolery's Claim Regarding the Denial of His Motion to Suppress Is Not Preserved for Appellate Review

In his final point, Woolery contends the circuit court erred in overruling his motion to suppress and allowing admission of evidence that he possessed and sold a controlled substance because the detectives lacked authority under section 70.820.2 to respond to emergency situations outside the Sedalia city limits.

This specific claim, however, goes beyond the issue Woolery actually raised in his motion to suppress, which was that the admission of evidence that he possessed and sold a controlled substance would violate his constitutional rights because the detectives lacked jurisdiction to arrange drug buys outside city limits. Woolery's Point V "is an issue raised for the first time on appeal" and, therefore, is "not preserved for appellate review."

*McLemore v. State*, 635 S.W.3d 554, 563 n.3 (Mo. banc 2021).  Woolery does not request

plain error review of this claim under Rule 30.20.  Point V is denied.[16]

**Conclusion**

Finding no error, the circuit court's judgment is affirmed.


_____

Robin Ransom, Judge


All concur.

---

[16]  Even were this claim properly preserved, it is without merit.  Woolery does not assert that the controlled buys were "emergency situations," nor does he explain how the detectives responded to the buys in a manner that would violate section 70.820.2.